**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:13-61747-CIV- MGC/EGT**

KURT S. SOTO, an individual, on behalf of
himself and all others similarly situated,

      Plaintiff,

vs.

THE GALLUP ORGANIZATION, INC., a
Delaware corporation,

      Defendant.

_____/

LAURIE C. MARR, on behalf of herself
and all others similarly situated,

      Plaintiff,

vs.

GALLUP, INC.,

      Defendant.

_____/

ANN FOX, individually and on behalf of all
others similarly situated,

      Plaintiff,

vs.

GALLUP, INC.,

      Defendant.

_____/

**PLAINTIFFS' UNOPPOSED MOTION AND PLAINTIFFS' MEMORANDUM OF
LAW IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED
<u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    HISTORY OF THE LITIGATION ..................................................................... 3

III.   SETTLEMENT NEGOTIATIONS ..................................................................... 6

IV.    SETTLEMENT TERMS ..................................................................................... 7

       A.   Monetary Relief Under the Settlement .................................................. 7

       B.   Class Notice, Claims Administration, and Attorney Fees ..................... 8

       C.   Objectors and Intervenors .................................................................... 11

V.     THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS .......... 12

       A.   Recovery Under the Circumstances is Significant ............................... 14

       B.   The Settlement is the Product of Serious, Informed, Non-collusive Negotiations
            and Contentious Litigation ................................................................... 18

       C.   Settlement Class Members Will Be Afforded Ample Due Process .................... 18

VI.    CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002)................... 12

*Beherens v. Wometco Enterprises, Inc.*, 18 F.R.D. 534 (S.D. Fla. 1988) ................................ 14

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ....................................................... 15

*Borcea v. Carnival Corp.*, 238 F.R.D. 664 (S.D. Fla. 2006) ................................................... 14

*Camden I Cond. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ............................................. 9

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977).................................................................. 16

*Eslava v. Gulf Tel. Co.*, 2007 WL 4105977 (S.D. Ala. Nov. 16, 2007) ................................... 9

*Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dis. LEXIS 37863 (S.D. Fla. May
    11, 2007)........................................................................................................................ 13

*Henson v. CIBA-GEIGY Corp.*, 261 F.3d 1065 (11th Cir. 2001) ........................................... 12

*In re Friedman's, Inc.*, Sec. Litig., 2009 WL 1456698 (N.D.Ga. May 22, 2009)................... 9

*In re Synthroid Mktg. Litig.*, 197 F.R.D. 607 (N.D. Ill. 2000) ............................................... 12

*In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985 (S.D. Ohio 2001) ............................ 16

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..................................... 13

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo. 2006) ...................................................... 12

*Noell v. Suncruz Casinos*, 2009 WL 541329 (M.D.Fla. Mar. 4, 2009) ................................... 9

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615 (9th
    Cir. 1982) ..................................................................................................................... 15

*Sewell v. D'Alessandro & Woodyard, Inc.*, 2011 WL 6047085 (M.D.Fla. Dec. 6, 2011)............ 9

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352 (N.D. Cal. Mar. 31,
    2014) ............................................................................................................................ 14

*Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542 (N.D.Ala. July 17, 2012) ................... 9

**Statutes**

28 U.S.C. 1651(a) .......................................................................... 12

Telephone Consumer Protection Act, 47 U.S.C. § 227 ....................................1, 3

**Rules**

*Fed. R. Civ. P.* 23 .......................................................................... 19

**Treatises**

4 Herbert N. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002) ......... 13

7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane Federal Practice & Procedure §
   1798.1 .......................................................................... 12

Alan Hirsch & Diane Sheehey, Fed.Judicial Ctr., Awarding Attorneys' Fees and Managing
   Fee Litigation 72-73 (2005) .................................................... 9

David F. Herr, *Annotated Manual for Complex Litigation* (4th ed. 2004) ............................. 19

Wright, Charles Alan and Miller, Arthur R*., 7AA Fed. Prac. & Proc. Civ.* § 1786 (3d ed.). .. 19

## I.    INTRODUCTION

Plaintiffs, Kurt S. Soto, Laurie C. Marr, and Ann Fox (collectively "Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated "Settlement Class Members",[1] submit this Unopposed Motion and Memorandum of Law in Support of Preliminary Approval of Proposed Class Action Settlement Agreement ("Settlement Agreement"). Defendant Gallup, Inc., formerly known as The Gallup Organization, Inc. does not oppose the relief requested in this Motion and consents to entry of an order approving the Parties' Settlement Agreement.[2]

Plaintiff Kurt S. Soto brought this class action on behalf of himself and a nationwide class of other individuals who received survey calls to their cellular telephones, from Gallup. Plaintiff alleged that Gallup placed the calls through the use of an automatic telephone dialing system without the prior express consent of Plaintiff or the putative class. Unlike many other TCPA cases that involve sales calls or debt collection calls, Gallup placed the calls to conduct public opinion polls of Plaintiffs and Class Members.

Plaintiff Soto asserted claims for negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (b)(1)(A)(iii). DE 4, ¶¶ 29-32.

Thereafter, two related putative class actions were filed by Plaintiffs Laurie C. Marr and Ann Fox in the Southern District of California and the Central District of California. The *Marr* and *Fox* cases, which asserted identical TCPA claims against Gallup, were

---

[1] Capitalized words in this Motion correspond to defined terms in the Settlement Agreement.

[2] The following documents have been filed with this motion: **Exhibit A** is the Settlement Agreement ("Agreement"); **Exhibit B** is the Declaration of Seth Lehrman ("Lehrman Decl."); and **Exhibit C** is a proposed Order granting preliminary approval of the settlement.

1

transferred to the Southern District of Florida and consolidated with the *Soto* action. In addition, the Court appointed the firms of Seth Lehrman and Scott Owens Interim Co-Lead Class Counsel and Bret Lusskin P.A., Law Offices of Doug J. Campion, APC, and Adler Law Group, APLC as Interim Class Counsel. DE 39.

This contentious litigation has included extensive conferral regarding the nature and accessibility of Defendant's electronically stored information, discovery, discovery motions, a court-ordered mediation, and months of negotiation.  The Settlement negotiations began at a court-ordered mediation and continued for several months.  Despite their significant differences, the Parties have been able settle this action on behalf of a nationwide Settlement Class comprised of all persons in the United States who, received a survey call from Gallup to a cellular telephone, through the alleged use of an automatic telephone dialing system, from August 16, 2009 through August 16, 2013 (the "Calls").  The parties have determined that there are approximately 6.93 million unique cellular telephone numbers associated with the Settlement Class.[3]

The Settlement Agreement was reached after considering such factors as: (1) the benefits to Plaintiffs and Settlement Class Members; (2) the strength of the Parties' respective positions; (3) the attendant risks and uncertainty of litigation, especially likely appeals; (4) Defendant's vigorous defense of the action and continued denial of the claims and facts at issue; and (5) the desirability of consummating this Settlement Agreement promptly, to secure important and valuable benefits for Settlement Class Members.[4]

---

[3] Lehrman Decl., ¶ 9.
[4] Lehrman Decl., ¶ 24.

2

As set forth in the attached Settlement Agreement, Gallup will pay $12,000,000 to establish a Settlement Fund. The Settlement shall be used to provide the exclusive recovery and relief for the Class, any reasonable attorneys' fees and costs approved and awarded by the Court to Plaintiffs' Counsel, any incentive awards approved and awarded by the Court to Plaintiffs Soto, Marr and Fox, and the costs of notice and settlement administration. Agreement, at ¶ 3.

Plaintiffs now move the Court for an order preliminarily approving the proposed Settlement, provisionally certifiying the Class pursuant to F.R.C.P. Rule 23(b)(3) for settlement purposes, directing dissemination of class notice and scheduling a final approval hearing. The proposed Settlement satisfies all criteria for preliminary settlement approval under Eleventh Circuit law, as discussed below.

## II.    HISTORY OF THE LITIGATION

On August 12, 2013, Plaintiff Soto initiated the Action by filing a complaint seeking statutory damages and injunctive relief against Gallup for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), by placing calls to cellular telephone numbers through the alleged use of an automatic telephone dialing system without the prior express consent of Plaintiff Soto or the putative class members (the "Complaint"). On August 16, 2013, Plaintiff Soto filed the First Amended Class Action Complaint, seeking statutory damages and injunctive relief against Gallup based on alleged violations of the TCPA, by placing calls to cellular telephone numbers through the alleged use of an automatic telephone dialing system, without the prior express consent of Plaintiff Soto or the putative class members (the "Amended Complaint").  The Complaint and Amended Complaint are collectively referred to herein as the "Complaints."

3

On August 16, 2013, Plaintiff Soto filed a Motion for Class Certification and asked that the Court stay any ruling on the Motion until the completion of discovery. The Court denied the Motion for Class Certification without prejudice and gave Plaintiff leave to renew the Motion upon completion of discovery or earlier if necessary. DE 24.

Plaintiffs' counsel organized the related cases by seeking consolidation of the litigation, meeting and conferring with opposing counsel numerous times regarding discovery, and seeking an interim appointment as class counsel. Plaintiffs' counsel moved under Rule 23(g) for appointments as Interim Co-Lead and Interim Class Counsel. DE 29. In addition, Plaintiffs moved to consolidate the three related cases pursuant to Rule 42(a) and to appoint interim co-lead and class counsel under Rule 23(g).

On October 11, 2013, Plaintiff Marr filed a Class Action Complaint in the Southern District of California entitled *Laurie C. Marr v. Gallup, Inc.*, which was assigned Civil Case Number 1:14-cv-20116-RSR.  On January 10, 2014, the *Marr* action was transferred from the Southern District of California to the Southern District of Florida. On January 7, 2014, Plaintiff Fox filed a Class Action Complaint in the Central District of California entitled *Ann Fox v. Gallup, Inc.*, which was assigned Civil Case Number 1:14-20538-CIV-RSR.  This case was likewise transferred to the Southern District of Florida. On April 3, 2014, the Court granted Soto's motion to consolidate and issued an order that consolidated the *Soto*, *Marr* and *Fox* cases and designated *Soto* as the lead case.

On November 15, 2013, the Court entered a scheduling order and referred the case to mediation. The parties exchanged their initial disclosures of witnesses and documents on December 16 and 20, 2013 respectively.

4

On April 3, 2014, the Court consolidated the three related cases and appointed the law firms of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. and Scott D. Owens, P.A. as Interim Co-Lead Class Counsel and appointed them, along with Brett Lusskin, P.A., Douglas Campion, and Elliot Adler, as Interim Class Counsel (collectively "Class Counsel").

In addition to protracted motion practice, this action involved significant discovery, including requests for production of documents, interrogatories, and a Rule 30(b)(6) deposition of Defendant Gallup.[5] Throughout this action, the Parties held numerous meet-and-confer sessions concerning the scope of the Parties' productions of documents in response thereto.[6]  As a result of Plaintiffs' discovery requests, Defendant produced requested documents, all of which Class Counsel reviewed and analyzed.[7] Class Counsel deposed Defendant's *Fed. R. Civ. P.* 30(b)(6) designee on October 2, 2014.[8]

The Parties also engaged in significant motion practice, in addition to the motion for class certification, the motion to consolidate, and the motion for interim appointment as class counsel.[9] On April 3, 2014, Defendant Gallup moved to stay the litigation pursuant to the primary jurisdiction doctrine, requesting that the Court stay the litigation while petitions before the FCC were pending. DE 40. Plaintiffs opposed this motion, filing a motion to stay briefing of Defendant's motion and requesting that Defendant's motion be denied. DE 43.

---

[5] Lehrman Decl., ¶ 10.
[6] *Id.* ¶ 12.
[7] *Id.* ¶ 13.
[8] *Id.* ¶ 14.
[9] *Id.* ¶ 15.

5

Thereafter, Plaintiffs and Defendant filed multiple supplemental notices of authority, briefing the court on additional subsequent cases. DEs 45-47, 54, 55, 57, 61.

On May 19, 2014, Plaintiffs requested a status conference with the Federal Magistrate Judge to resolve discovery disputes and reach an agreement and discovery plan to facilitate discovery of the total number of unique cellular phone numbers at issue in the litigation and discovery about Defendant's telephone and dialing systems relevant to the issue of whether the telephone system used by Defendant to place the subject telephone calls constitutes an Automatic Telephone Dialing System or "ATDS" under the TCPA.[10] The parties met and conferred numerous times regarding the sufficiency of Defendant's responses to Plaintiffs' discovery requests.[11]

In addition, the parties individually and jointly submitted numerous filings related to the Court's scheduling orders and seeking relief from scheduling orders to ensure that this matter could be fully and fairly litigated and to ensure compliance with the Court's orders.[12]

## III.   SETTLEMENT NEGOTIATIONS

On October 20, 2014, Class Counsel and Gallup attended an all-day mediation with the Honorable Morton Denlow (Ret.) of JAMS. Following the mediation, Class Counsel and Gallup's counsel continued negotiations via e-mail and by telephone to reach an agreement to settle the instant Action on a class-wide basis.[13]

---

[10] *Id.* ¶ 16.
[11] *Id.*
[12] *Id.* ¶ 17.
[13] *Id.* ¶ 18.

6

On October 29, 2014, the Parties reached an agreement on the basic terms of settlement for the Settlement Class.[14] For the next five months, the Parties continued settlement discussions in earnest, negotiating the specific terms of the agreement and accompanying Exhibits.[15] These additional negotiations and numerous others resulted in the Settlement Agreement the Parties are now proposing that the Court preliminarily approve.[16]

## IV.   SETTLEMENT TERMS

The agreed-upon Settlement Class that the Parties propose the Court to certify for purposes of the Settlement consists of:

> "All persons in the United States who received a survey call from Gallup to a cellular telephone, through the alleged use of an automatic telephone dialing system, from August 16, 2009 through August 16, 2013."

> Excluded from the Settlement Class are (1) Defendants and their parents, subsidiaries, affiliates, and any of their current officers, directors, and employees; (2) all officers, employees, and agents of Plaintiffs' Counsel, counsel of record for Defendants, and their immediate families; and (3) members of the Southern District of Florida judiciary and their immediate families.

> Agreement ¶ 1.1.

### A. Monetary Relief Under the Settlement

Pursuant to the Settlement, Gallup will establish a Settlement Fund of $12,000,000 which is a common fund. Agreement ¶ 3. The Settlement Fund will be used to make payments to Settlement Class Members who submit timely claims, to pay for the costs of notice and settlement administration, any awards of attorney fees and costs awarded by the Court and any incentive awards to the Plaintiffs approved by the court. *Id.* The Settlement

---

[14] *Id.* ¶ 19.
[15] *Id.*
[16] *Id.*

7

provides that all Unclaimed Funds will be paid to the National Consumer Law Center as a cy pres award and will not revert to the Defendant.

### B.  Class Notice, Claims Administration, and Attorney Fees

The costs of providing notice to the Settlement Class and the costs of claims administration will be paid from the Settlement Fund. *Id.*, ¶¶ 3, 7.2. The cost of providing notice and settlement administration will be approximately $2.5 million.[17] Subject to Court approval, Defendant agrees not to object to an attorney fee and costs award of $4,000,000 to Class Counsel and incentive awards of $2,000 to each named Plaintiff. Agreement, at ¶¶ 5, 6. The amount of attorneys' fees and expenses to be paid to Class Counsel was not determined by the Parties until agreement was reached in principle on the other terms of this proposed Settlement.[18]  As will be detailed at the appropriate time, Class Counsel's request for attorneys' fees is supported under a percentage of common fund analysis which reflects that the proposed fee award is one-third of the Settlement Fund. Moreover, commentators have observed that the 11th Circuit requires application of a percentage method to award attorney fees in common fund settlements, such as the settlement of this action. *See* Alan Hirsch & Diane Sheehey, Fed.Judicial Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* 72-73 (2005) *citing Camden I Cond. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)("Attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."). Moreover, there is ample

---

[17] Lehrman Decl., ¶ 21.
[18] *Id.* ¶ 20.

11th Circuit authority and district courts in this Circuit supporting awards of attorney fees that exceed twenty-five percent and awards of one-third.[19]

The Settlement establishes a Notice Plan that will provide best practicable notice to Settlement Class Members. Angeion Group has been selected as the Settlement Administrator.[20] The Settlement Administrator will send direct mail notice[21] to all Settlement Class Members, for whom the Settlement Administrator was able to obtain a complete mailing address through a reverse look up. The Settlement Administrator will utilize multiple reverse look up sources to identify as many class members as possible. If reverse look up results in direct mail notice being sent to seventy percent (70%) or more of Settlement Class Members, then no publication notice will be made. Agreement, ¶ 8.3. However, if direct mail notice is sent to less than seventy percent (70%) of Settlement Class Members, then publication notice[22] in a national publication will be made. *Id.* Within sixty (60) days after the Court enters an order preliminarily approving the Parties' Settlement Agreement, the Settlement Administrator will deliver the Notice of the Settlement and the opportunity to opt-out of this Settlement Class case and to object to the Settlement by postcards to Settlement Class Members through the United States Postal Service. *Id.* at ¶

---

[19] *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542 (N.D.Ala. July 17, 2012)(35% fee award approved); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D.Fla. 2011) (30% of settlement fund); *Sewell v. D'Alessandro & Woodyard, Inc.*, 2011 WL 6047085 (M.D.Fla. Dec. 6, 2011) (30%; finding that each Johnson factor supported the agreed upon percentage); *In re Friedman's, Inc.*, Sec. Litig., 2009 WL 1456698 (N.D.Ga. May 22, 2009) (30% reasonable for this case and "typical of contingency fees in class actions in this market for legal services"); *Noell v. Suncruz Casinos*, 2009 WL 541329 (M.D.Fla. Mar. 4, 2009)(30% of settlement fund); *Eslava v. Gulf Tel. Co.*, 2007 WL 4105977 (S.D. Ala. Nov. 16, 2007) (30%).
[20] Lehrman Decl., ¶ 21.
[21] Post Card Notice is attached to Agreement as Exhibit A.
[22] Publication Notice is attached to Agreement as Exhibit C.

9

8.2.4.  The postcard notice directs Class Members to the Settlement Website containing the long-form settlement notice which advises Settlement Class Members of the binding effect Settlement of the case would have, how to exclude themselves to avoid being bound, and the procedures for opting out. [23]

In addition, the Settlement Administrator will establish a Settlement Website and an 800 number for Settlement Class Members to contact. Agreement, at ¶¶ 8.4, 8.5. The Settlement website will be established when direct mail notice is sent and will provide access to important documents, including: Plaintiff's Complaint, the Settlement Agreement, the Motion for Preliminary Approval, the Preliminary Approval Order, the Motion for Final Approval and the Final Judgment. *Id.* In addition, the Settlement Website will include the deadlines for filing claims, requests for exclusion from the Settlement Class, objections and final approval and other information pertaining to the settlement and how to submit claims, FAQ's, and an interactive function that permits Settlement Class Members to submit or download a Claim Form online by using a unique class member identifier contained on the Notice. *Id.* The Settlement Administrator will also serve on the Attorneys General of each U.S. State in which there are members of the Class, the Attorney General of the United States, and other required government officials, the notice required by CAFA, 28 U.S.C. § 1715, and shall provide Class Counsel with a Notice to be filed with the Court indicating compliance with § 1715. *Id.*, 8.6

---

[23] Long Form Settlement Notice is attached to Agreement as Exhibit D.

### C. Objectors and Intervenors

The Parties also propose that the Court establish the following deadlines and procedures for objectors and/or interveners set forth in the proposed notice (Website Notice ¶ 11) and the Settlement Agreement (Agreement ¶ 11) to ensure that that all interested persons are afforded a reasonable opportunity to be heard and that the Fairness Hearing may be conducted in an orderly, efficient, and just manner. First, the Parties propose that any Settlement Class Member or governmental entity that wishes to object to the proposed Settlement do so by filing a written objection, containing all information required by the proposed direct-mail notice (Agreement ¶ 11) with the Court no later than one hundred fifty (150) days from entry of the Preliminary Approval Order Settlement Class Members. Second, any motion for intervention must be filed with the Court no later than one hundred fifty (150) days from entry of the Preliminary Approval Order Settlement Class Members. Any objector and/or intervener who does not properly and timely object in the manner set forth above and described more fully in the proposed direct-mail notice,[24] will not be permitted to appear at the Fairness Hearing or to object, or to intervene in the case. Plaintiffs request that the Court's Preliminary Approval Order contain a temporary injunction enjoining other proceedings relating to the Released Claims in order to preserve the status quo pending the Court's final decision on the reasonableness and fairness of the settlement.[25]

---

[24] *Id.*

[25] Such injunction is authorized under the All Writs Act, 28 U.S.C. 1651(a), which provides, in pertinent part, that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. 5 1651(a); *see Henson v. CIBA-GEIGY Corp.*, 261 F.3d 1065, 1068 (11th Cir. 2001). Settlement

## V.    THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS

"[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'" *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D., 457, 466 (S.D. Fla. 2002)(citation omitted); *see Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)(same); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same).   Moreover, "[i]n evaluating a settlement's fairness, 'it should [not] be forgotten that compromise is the essence of a settlement.   The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (quoting *Cotton*, 559 F.2d at 1330); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (same).

Approval of a class-action settlement is a two-step process.   In the first step, the Court determines whether the proposed settlement should be preliminarily approved.   *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004).   In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether

---

injunctions are commonly employed. *See, e.g., Fresco v. Auto Data Direct, Inc.*  2007 WL 2330895, 10 (S.D.Fla.,2007) (enjoining settlement class members from "commencing, continuing or taking any action in any judicial proceeding in any state or federal court or any other judicial or arbitral forum against the released parties in the proposed Settlement with respect to any of the claims or issues covered by the proposed Settlement"); *In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000) ("An injunction, where necessary to protect the court's earlier orders, including preliminary approval of the settlement of this class action, is authorized under the All Writs Act."); 7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane Federal Practice & Procedure § 1798.1 ("Once a settlement has been approved, then an injunction barring parallel litigation may be justified in order to protect and effectuate the court's order regarding those settlements.").

the settlement should be finally approved.  *See id.* §§ 21.633 - 35.   At the preliminary approval stage, the court makes the original determination whether the proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify approval of the settlement, and in this process the court sets a final fairness hearing to decide whether the proposal is indeed fair, reasonable and adequate in the ultimate sense. *In Re Amino Acid Lysine Antitrust Litigation*; *Manual for Complex Litigation* § 21.632 (4th ed. 2004).   At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the settlement may be given to the class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement. See 4 Herbert N. Newberg & Alba Conte, *Newberg on Class Actions*, §11.25 (4th ed. 2002); David F. Herr, *Annotated Manual for Complex Litigation* ("Manual") §21.632 (4th ed. 2008).   In so doing, the Court reviews the Settlement to determine if it "is 'within the range of possible approval' or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dis. LEXIS 37863, at *11-*12 (S.D. Fla. May 11, 2007)(internal citations omitted); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)(A proposed settlement must be "fair, adequate and reasonable and [not] the product of collusion between the parties.").

Here, there are several reasons why the proposed Settlement Agreement is within the realm of reasonableness and provides probable cause to provide notice of it to the Settlement Class:

## A. Recovery Under the Circumstances is Significant

"[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Beherens v. Wometco Enterprises, Inc.*, 18 F.R.D. 534, 542 (S.D. Fla. 1988).   This Settlement meets a critical test in gauging its fairness and reasonableness: the Settlement provides significant, concrete relief to affected Settlement Class Members. The proposed Settlement would create a Settlement Fund of $12,000,000 to compensate people who received calls to cellular phones from Gallup between August 16, 2009 and August 16, 2013. Settlement Class Members who submit timely valid claims will receive a pro rata share of the Settlement Fund in the form of a check (after any attorneys' fees, costs and incentive awards awarded by the Court, and any costs of claims administration and notice are deducted).

The proposed Settlement is a significant TCPA class action settlement. The total recovery compares favorably to recent common fund TCPA settlements, particularly those obtained against other privately held corporations.[26] Moreover, Gallup is a privately held corporation that conducts interviews and polls in order to research the public's opinion on a variety of topics, including social and political issues. Its financial condition and ability to fund a settlement is considerably less than the publicly traded corporations with billion dollar plus market valuations that have recently settled TCPA class actions. Plaintiffs have produced a twelve million dollar common fund settlement. The entire Settlement Fund will

---

[26] *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352, at *1 (N.D. Cal. Mar. 31, 2014)(Court approved $8.7 million common fund TCPA class action settlement); *Spillman v. RPM Pizza, LLC*, No. CIV.A. 10-349-BAJ, 2013 WL 2286076, at *1 (M.D. La. May 23, 2013)($9.75 million common fund TCPA class action settlement approved by court).

14

be distributed for the benefit of Settlement Class Members and no proceeds will revert to Defendant. Settlement Class Members will receive a *pro rata* share of the Settlement Fund, after deduction of notice and settlement administration costs, approved attorney fee and incentive awards. Based on past class action settlements, it is anticipated that Settlement Class Members who submit timely claims will receive between twenty-five dollars ($25) and eighty ($80).[27] The Settlement represents a significant recovery, both in terms of the Settlement Fund of $12 million and the anticipated recovery per Settlement Class Member.

The circumstances of the Defendant *vis-à-vis* its ability to survive a judgment in favor of the Settlement Class at issue is also a relevant consideration. "Because class actions vary so widely in their circumstances, the trial judge is vested with broad discretionary control over the conduct of such actions enabling the presiding judge to respond fluidly to the varying needs of particular cases." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 633 (9th Cir. 1982). Absent a settlement, the final resolution of this action through the trial process may require several more months or years of protracted adversary litigation and appeals, which may delay relief or entirely eliminate any obtainable relief to Settlement Class Members. Defendant Gallup is a privately held corporation. The Settlement imposes a significant financial burden on Defendant for the benefit of Settlement Class Members but does not annihilate Defendant.

That this Settlement would eliminate the delay and expenses of litigation strongly weighs in favor of approval. *See e.g.*, *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). For class actions in particular, courts view settlement favorably

---

[27] Lehrman Decl., ¶ 22.

because it "avoids the costs, delays and multitudes of other problems associated with them." *Id*. at 1013.   "[C]lass action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331.    "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation. In this respect, [as this Court has observed] '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (citation omitted). This is a complex case, involving cutting edge legal issues.

A rigorously contested issue arising from this litigation is the question of whether Gallup uses an ATDS as defined by the TCPA.  Gallup contends that this definition requires that Gallup's dialing equipment have the *current,* not theoretical, capacity to place calls using a sequential number generator and to dial such numbers. Plaintiffs contend that Gallup's dialing system possesses current capacity and therefore constitutes an ATDS under the TCPA.

During the litigation of this action, Plaintiff also argued that, aside from whether Gallup's equipment had the current capacity to place calls using a random or sequential number generator, Gallup's equipment constituted a "predictive dialer," and was thus regulated by the TCPA.

Throughout this litigation, Plaintiff and Gallup have heavily disputed whether Gallup used equipment proscribed by the TCPA to place calls to putative class members. This issue remains disputed, and in fact, there are currently-pending petitions before the

16

FCC to clarify the exact issues presented above.[28] These petitions request clarification from the FCC regarding the scope of the term "automated telephone dialing system" under the TCPA and specifically ask the FCC to determine whether "capacity", as used in the TCPA's definition of ATDS, means "theoretical" capacity or "present" capacity to store, produce, or dial random or sequential numbers. Plaintiffs were confident that they could demonstrate to the Court that Gallup's telephone system constituted an ATDS. However, there was a risk that a decision by the FCC of the pending petitions could limit the claims or relief available to Plaintiffs and the Class.

Another issue that is currently before the FCC, which could affect the merits of Plaintiffs' claims, is whether the TCPA should apply to calls made for polling or research purposes.[29]

Accordingly, it is clearly advantageous for Settlement Class Members to obtain this monetary relief without further delay and for sums certain.  The proposed Settlement Agreement is the most realistic and the best current outcome as could be expected in the particular circumstances of this action, the Settlement Class Members and Defendant.  This provides a compelling reason why it should be preliminarily approved and Notice provided to the Settlement Class.

---

[28] *See In the Matter of YouMail, Inc.'s Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (April 29, 2013); *Professional Association for Customer Engagements' Petition for Expedited Declaratory Ruling and/or Expedited Rulemaking*, CG Docket No. 02-278 (October 18, 2013).
[29] *RTI International's Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (September 29, 2014).

**B. The Settlement is the Product of Serious, Informed, Non-collusive Negotiations and Contentious Litigation**

Furthermore, where a settlement results from "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted). Here, as detailed above, this action has been highly contentious—involving a motion for class certification, motion to consolidate, motion for interim appointment as class counsel, motion to stay under the primary jurisdiction doctrine, and request for a status conference regarding discovery disputes. Discovery was extensive and involved several requests for information and documents, and a Rule 30(b)(6) deposition of Gallup. Despite their significant differences, the Parties—fully informed as to the facts and circumstances, the size and nature of the Settlement Class and represented by experienced counsel—have been able settle this case.[30] This Settlement therefore exemplifies "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred" and is thus presumptively fair and reasonable.

**C. Settlement Class Members Will Be Afforded Ample Due Process**

A central aim of the preliminary approval process is to authorize notice and provide notice of the settlement to the class so that the merits of the settlement can be reviewed by all those affected. Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *Fed. R. Civ. P.* 23(e)(1). The "Individual members in a Rule 23(b) (3) action have a right to opt out of the class proceedings." David F. Herr, *Manual for Complex Litigation* § 21.311 at 287 (4th ed.

---

[30] Lehrman Decl., ¶ 23.

2004). "Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort." *Id*.; *see* Wright, Charles Alan and Miller, Arthur R.*, 7AA *Fed. Prac. & Proc. Civ.* § 1786 (3d ed.).

The proposed notice plan will provide the best practicable notice to Settlement Class Members because it includes both direct mail notice to all Settlement Class Members for which the Settlement Administrator obtains a complete mailing address and nationwide publication notice, if direct mail notice is sent to less than 70% of Settlement Class Members.[31] In addition, a Settlement Website will be maintained that will provide the settlement notice, claim form, other important documents and answers to frequently asked questions about the Settlement.[32]

The notice reasonably informs Settlement Class Members of: (1) the litigation, the Settlement Class and the essential terms of the proposed Settlement and its binding effect on those members who stay in the Settlement Class; (2) information about this Court's final approval procedure; (3) how to object to the Settlement and intervene; (4) how to request to be excluded from this Class Action Settlement; and (5) the Attorneys' Fee and Costs Award and Class Representative incentive awards amounts that Class Counsel will be requesting. Due Process and Rule 23(e) are therefore satisfied.  Notice of this Class Action Settlement should proceed.

---

[31] Agreement 8.2, 8.3, and Lehrman Decl., ¶ 26.
[32] Agreement 8.3.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court issue an order granting preliminary approval of the Settlement Agreement consistent with the attached proposed order.


Dated: May 15, 2015                    Respectfully submitted,


*/s/ Seth M. Lehrman*
Steven R. Jaffe (Fla. Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Fla. Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Fla. Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822


Scott D. Owens (Fla. Bar No. 0597651)
Email: scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33091
Telephone: (954) 589-0588
Facsimile: (954) 337-0666


Bret L. Lusskin, Jr. (Fla. Bar No. 28069)
Email: Blusskin@lusskinlaw.com
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844

20

Douglas J. Campion, Esq.*
Email: doug@djcampion.com
LAW OFFICES OF DOUGLAS J. CAMPION,
APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

E. Elliot Adler, Esq.*
Email: eadler@theadlerfirm.com
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone (619) 531-8700
Facsimile (619) 342-9600

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on May 15, 2015, to all counsel of record listed below via email.

*/s/ Seth M. Lehrman*
Seth M. Lehrman

21

**SERVICE LIST**
*Soto v. The Gallup Organization, Inc.*
**CASE NO. 0:13-CV-61747- COOKE/TORRES**
**United States District Court, Southern District of Florida**

Felicia Yu, Esq.*
Email: fyu@reedsmith.com
Raagini Shah, Esq.*
Email: rshah@reedsmith.com
Abraham J. Colman, Esq.*
Email: acolman@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 457-8000
*Admitted Pro Hac Vice*

J. Randolph Liebler (Fla. Bar No. 507954)
Email: jrl@lgplaw.com
Dora F. Kaufman (Fla. Bar No. 771244)
Email: dfk@lgplaw.com
LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Facsimile: (305) 379-9626

*Attorneys for Defendant*

Todd M. Friedman, Esq.
Email: tfriedman@attorneysforconsumers.com
Nicholas J. Bontrager, Esq.
Email: nbontrager@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN, PC
369 South Doheny Drive, Suite 415
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 623-0228

Abbas Kazerounian, Esq.
Email: ak@kazlg.com
Matthew M. Loker, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1

22

Costa Mesa, CA 92626
800-400-6808
Facsimile: 800-520-5523

Joshua B. Swigart, Esq.
Email: josh@westcoastlitigation.com
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: 619-233-7770
Facsimile: 619-297-1022

*Attorneys for Plaintiff Ann Fox in related action*
*Fox v. Gallup (1:14-cv-20538)*