# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

KURT S. SOTO, an individual, on behalf
of himself and all others similarly situated,

    Plaintiff,

v.                             **CASE NO. 13-cv-61747-MGC**

THE GALLUP ORGANIZATION, INC.,
a Delaware corporation

    Defendant,

_____

LAURIE C. MARR, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

GALLUP, INC.,

    Defendant,

_____

ANN FOX, individually and on behalf of
all others similarly situated,

    Plaintiff,

v
.
GALLUP, INC.,

    Defendant.

_____

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ............................................................................................... 1

II.     SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT ............... 2

III.    SETTLEMENT TERMS ...................................................................................... 3

  A.   The Settlement  Fund ..................................................................................... 3

  B.   Payment of Notice, Claims Administration, Incentive Awards, and Attorney Fees
  and Costs.............................................................................................................. 4

  C.   Release .......................................................................................................... 5

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...................... 5

   A. The Agreement is the Result of Arm's Length Negotiation between the Parties with
   the Assistance of an Experienced Mediator ..................................................... 7

   B. The Agreement Satisfies Each of the Eleventh Circuit's Bennett Factors.................... 7

      1.   Likelihood of Success at Trial.............................................................. 8

      2.   Range of Possible Recovery and the Point at which the Agreement is Fair,
      Reasonable, and Adequate ...................................................................... 9

      3.   The Complexity and Expense of Further Litigation............................................ 11

      4.   Substance and Amount of Opposition to Agreement .......................................... 12

      5.   Stage of Proceedings at which Settlement Achieved ........................................... 14

V.      THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT ........................... 15

VI.     CONCLUSION.................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 (S.D. Fla. May 7, 2002) ............................................................................................... 14

*Adams v. AllianceOne Receivables Mgmt.*, No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) .......... 10, 11

*Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007)......................... 15

*Agne v. Papa John's International, et al.*, 2:10-cv-01139 (W.D. Washington)(DE 389) ........... 11

*Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 (S.D. Fla. Apr. 7, 2006) ............................................................................................ 13

*Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 (W.D. Wash. Jan. 10, 2012) ...................................................................................................................... 10

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543 (S.D. Fla. 1988) ........................................... 12

*Bellows v. NCO Financial Systems, Inc.*, 3:07-cv-01413 (S.D. California)(DE 38 at 6) ............ 11

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). ..................................................... 6

*Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D. Fla. 2011)............................................ 7

*Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash.)(DEs 61 at 3; 72) ................... 11

*Cubbage v. The Talbots, Inc. et al.*, 2:09-cv-00911 (W.D. Wash.)(DE 114, ¶ 11) ...................... 11

*Desai v. ADT Security Systems*, Case No. 1:11-cv-01925 (N.D. Illinois)(DEs 240 and 243) ... 10

*Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466 (W.D.Va. 2011).................................... 13

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2011)............................................ 15

*Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292 (S.D. Fla. 2007) ........................................ 9

*Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (N.D. Illinois)(DE 74)........ 11

*Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014)..................................................................................................... 10

*Hovila v. Tween Brands, Inc.*, 2:09-cv-00491 (W.D. Wash.)(DE 12, ¶ 12) .............................. 11

*In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015).. 11

*In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011)................................ 6

*In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306 (11th Cir. 2009) ................................................. 15

*In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)........................ 5

*In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 ................................................................................................................ 11

*In re Jiffy Lube International, Inc. Text Spam Litig.*, 3:11-MD-02261 (S.D. Cal.)(DEs 90-1 at 7-8; 97) ........................................................................................................... 11

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D.La. 1993) ............................................ 12

*In re Sturm, Ruger & Co., Inc.*, No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)............................................................................................................ 2

*In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323 (S.D. Fla. 2001) ............................... 6

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ........................................ 5

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ................................. 7

*Jamison v First Credit Servs., Inc.*, No. 1:12-cv-04415, DE 120 (N.D. Ill. July 29, 2013)........... 9

*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) .............................................. 15

*Kazemi v. Payless ShoeSource, Inc. et al.*, 3:09-cv-05142 (N.D. Cal.)(DE 94, ¶ 10).................... 11

*Kwan v. Clearwire Corp.*, 2:09-cv-01392 (W.D. Wash.)(DEs 201) ............................ 11

*Lemieux v. Global Credit & Collection Corp.*, 3:08-cv-01012 (S.D. Cal.)(DE 46, at 4)................ 11

*Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1319 (S.D. Fla. 2005) ................. passim

*Malta v. Freddie Mac & Wells Fargo Home Mortgage*, 3:10-cv-01290 (S.D. Cal.)(DE 91 at 5)... 11

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ...................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................... 15

*Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012).......................................................................................................... 8

*Paldo Sign and Display Company v. Topsail Sportswear*, Case No. 1:08-cv-05959 (N.D. Illinois)(DE 116)..................................................................................................... 11

*Perez v. Asurion Co.*, 501 F.Supp.2d 1360 (S.D. Fla. 2007) ........................... 8, 12, 14

*Sarabi v. Weltman, Weinberg & Reis Co.*, 3:10-cv-01777 (S.D. Cal.)(DE 42 at 6) ................... 11

*Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ........................................................................................................... 10

*Steinfeld, et al. v. Discover Financial Services, et al.*, 3:12-cv-01118 (N.D. Cal.)(DE 65 at 17) ... 11

*U.S. v. Alabama*, 271 F. App'x 896 (11th Cir. 2008) ................................................. 15

*Warnick v. Dish Network, LLC*, No. 1:12-cv-1952, DE 259 (D. Colo. Oct. 30, 2014) .............. 9

*Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988)................................... 5

*Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-02414 (M.D. Fla.)(DE 77 at 5) .......................................... 11

**Statutes**

28 U.S.C. § 1715 ............................................................................................................. 4, 17

47 U.S.C. § 227 ................................................................................................................ 1, 3

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................. 15, 17

Fed. R. Civ. P. 23(e)(1) ....................................................................................................... 15

## I.    INTRODUCTION

Plaintiffs, Kurt S. Soto, Laurie C. Marr, and Ann Fox (collectively "Plaintiffs"), individually and as representatives of the Settlement Class Members, submit this motion in support of final approval of the class action settlement entered into with Defendant, Gallup, Inc., formerly known as The Gallup Organization, Inc. ("Gallup"), which was preliminarily approved by this Court on June 16, 2015. [DE 79].

In this case, Plaintiffs alleged that Gallup, a global market research company, placed telephone calls to the cellular telephones of consumers using an automatic telephone dialing system" (or "ATDS") without the prior express consent of the persons called, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (the "TCPA").   Gallup denies these allegations.

This case presented a number of complex and disputed legal issues. It was not until after considerable law and motion practice, substantial discovery including requests for production of documents, interrogatories, an in-depth Rule 30(b)(6) deposition of Gallup's corporate representative, a full day of mediation before an experienced mediator, and lengthy negotiations for weeks after the mediation, that the Settlement was finally reached.[1]

Under the Agreement, Gallup has agreed to pay twelve million dollars ($12,000,000.00) to establish a Settlement Fund. The Settlement Fund shall be used to provide the exclusive recovery and relief for the Class, any reasonable attorneys' fees and costs approved and awarded by the Court to  Class Counsel, any incentive awards approved and awarded by the Court to the named Plaintiffs Soto, Marr and Fox, and the costs of notice and

---

[1] See Settlement Agreement and Release ("Agreement")[DE 77-1]. Capitalized words in this Motion correspond to defined terms in the Agreement.

1

settlement administration.  To date, 145,677 persons have submitted Claim Forms.  That is 3% of the class who were sent direct notice and is within the range of similar TCPA class cases that have been granted final approval. Moreover, only one class member has objected to the Agreement, and there have only been eighty-four (84) requests for exclusion.[2] The Settlement is expected to provide each Settlement Class Member who submitted a timely, valid Claim Form approximately thirty-four dollars ($34).

As shown below, the Agreement easily meets the standards for final approval. In granting preliminary approval, the Court found that the Agreement is "in all respects fundamentally fair, reasonable, adequate, and in the best interests of the settling class members." [DE 79, ¶8].  Nothing has changed to alter that conclusion.  The Agreement remains the product of lengthy arm's length negotiations between Gallup and experienced Class Counsel, and was reached with the guidance of the Honorable Morton Denlow (Ret.) who is well regarded as a skilled mediator.  As a result, the Agreement is presumptively fair, reasonable and adequate. *In re Sturm, Ruger & Co., Inc.*, No. 09-cv-1293, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.").

## II.    SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

On August 12, 2013, Plaintiff, Kurt S. Soto, commenced this action against The Gallup Organization, Inc. by filing a Complaint alleging that Gallup violated the Telephone

---

[2] The Court set November 13, 2015 as the deadline to submit exclusions or objections. Plaintiffs will submit a final total of all valid claims, exclusions and objections before the hearing for final approval of the Settlement.

2

Consumer Protection Act, 47 U.S.C. § 227, et seq., ("TCPA") by using an automatic telephone dialing system to place phone calls to Plaintiff's cellular telephone for the purpose of "polling" him on issues of political or social interest.  Owens Decl., ¶ 5.[3]  Thereafter, two related putative class actions were filed by Plaintiffs Laurie C. Marr and Ann Fox in the Southern District of California and the Central District of California, respectively. *Id*.  The *Marr* and *Fox* cases, which asserted virtually identical TCPA claims against Gallup, were transferred to the Southern District of Florida and consolidated with the *Soto* action. *Id*.

This case was extensively litigated which included multiple filings relating to Gallup's motion to stay, written discovery, discovery motions, deposition, expert witnesses, a court-ordered mediation, and months of settlement negotiations. *Id*., 6.

## III.   SETTLEMENT TERMS

The Class that Court preliminarily approved and certified for purposes of Settlement is defined as follows:

> All persons in the United States who received a survey call from Gallup to a cellular telephone, through the alleged use of an automatic telephone dialing system, from August 16, 2009 through August 16, 2013 (the "Calls").

### A.  The Settlement Fund

The Agreement provides that Gallup will pay $12,000,000 to establish a Settlement Fund. Agreement, ¶ 3.  The Settlement Fund shall be used to provide the exclusive recovery and relief for the Class, any reasonable attorneys' fees and costs approved and awarded by the Court to Plaintiff's Counsel, any incentive awards approved and awarded by the Court to Plaintiffs Soto, Marr and Fox, and the costs of notice and settlement administration. *Id*.

---

[3] Owens Decl. refers to the Declaration of Scott D. Owens in support of Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently as **Exhibit A**.

Class Members who submit a Valid Claim Form will receive a pro rata share of the Settlement Fund in the form of a check (after any attorneys' fees and costs awarded by the Court, any incentive awards to Plaintiffs Soto, Marr and Fox awarded by the Court, and any costs of notice and settlement administration are deducted from the Settlement Fund). *Id.*, ¶ 4.

**B.  Payment of Notice, Claims Administration, Incentive Awards, and Attorney Fees and Costs**

All costs and expenses of notice to the Settlement Class Members and management of the exclusion, objection, claim, and claim payment processes set forth in the Agreement, including the fees and expenses of the Notice and Claims Administrator necessary to implement those processes, and all costs and expenses of providing notice to as required by the Class Action Fairness Act, 28 U.S.C. § 1715 shall be paid out of the Settlement Fund. *Id.*, ¶ 7. The notice and settlement administration costs to date are approximately $2.9 million. Devery Decl., ¶ 15.[4]

Subject to court approval, Plaintiffs Soto, Marr, and Fox shall, in addition to any recovery that they are entitled to as a Settlement Class Members, be awarded an Incentive Award not to exceed two thousand dollars ($2,000.00) each.  As set forth in Paragraph 6 of the Agreement, Gallup does not object to an incentive award that does not exceed $2,000 for each named Plaintiff.

Under the Agreement, and subject to Court approval, the Parties have agreed that Class Counsel may apply to this Court for an award of costs and attorneys' fees in an amount

---

[4] Devery Decl. refers to the Declaration of Brian Devery of Settlement Administrator Angeion Group in support of Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently as **Exhibit B**.

not to exceed four million dollars ($4,000,000.00).  Gallup does not object to Plaintiffs' request

for an award of costs and attorneys' fees of up to $4 million. Agreement, ¶ 5.

## C. Release

In exchange for the relief described above, Gallup is released from all claims arising

out of Gallup's alleged use of an ATDS, any alleged violations of the TCPA or similar state

laws or related federal or state regulations, the Action, the Complaints, and/or the

administration of this Settlement, as described above and fully set forth in the Agreement.

Agreement, ¶ 14.[5] The release is applicable to all Settlement Class Members who did not

submit a request for exclusion.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of complex class action

litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly

favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp.

1051, 1054 (M.D. Fla. 1988) ("[S]ettlements are highly favored in the law."), aff'd, 893 F.2d

347 (11th Cir. 1989). With a settlement, the class members are ensured a benefit as opposed

to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air

Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some

deference should be given to the consensual decision of the Parties. *See Warren*, 693 F.Supp.

---

[5] The parties have agreed to enter into an Addendum to the Settlement Agreement which
clarifies that the release is limited in scope and releases only claims arising out of or relating
to Gallup's alleged use of an ATDS, any alleged violations of the TCPA or similar state laws
or related federal or state regulations, and does not release any claims held by the States or
other public entities.. The executed addendum will be included in Plaintiffs' supplemental
filing made before the final approval hearing.

at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation.") Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following, so-called *Bennett* factors are generally considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986.

In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arm's length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); see also *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.") Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the Parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

**A.     The Agreement is the Result of Arm's Length Negotiation between the Parties with the Assistance of an Experienced Mediator**

The context in which the Agreement was reached confirms that it was the result of arm's length and informed negotiations among the Parties, and not collusion. To start, the Agreement only came about after protracted motion practice, significant discovery including requests for production of documents, interrogatories, and an in-depth Rule 30(b)(6) deposition of Defendant Gallup. Ultimately, the Parties conducted an in-person mediation session by a highly-experienced and well-respected neutral, Honorable Morton Denlow (Ret.) of JAMS. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also Checking Account Overdraft Litig.*, 275 F.R.D. 654, at 662 (S.D. Fla. 2011) (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator). Moreover, the Parties reached the Settlement through experienced counsel, who had at their disposal ample information about the case facts to evaluate the terms of any proposed agreement, so as to reach a fair compromise. As such, it is clear the Agreement is the result of arm's length and informed negotiation between the Parties, not collusion. There are no factors standing the way of approval.

**B.     The Agreement Satisfies Each of the Eleventh Circuit's Bennett Factors**

In addition to being the result of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors. While the Eleventh Circuit instructs district courts to consider the

*Bennett* factors, "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F.Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.''" *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Agreement.

### 1.   Likelihood of Success at Trial

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1319 (S.D. Fla. 2005). Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiff's and the Settlement Class Members' ultimate success at trial is far from guaranteed. For instance, well into the litigation, Gallup moved to stay this action based on the Primary Jurisdiction Doctrine. [DE 40].  This motion, although fully briefed, remained unresolved and ever-present throughout the remainder of this proceeding. While Class Counsel were confident in the strength of the claims alleged in the Complaint and that Plaintiffs would ultimately prevail at trial, litigation is inherently unpredictable and the outcome of a trial is never guaranteed. Indeed, Plaintiffs faced significant risk in taking this matter to trial, including the possibility that the case would be defeated in dispositive pre-trial motions practice, the Court would deny class certification, or that the result at trial would be in Gallup's favor. These undeniable risks included arguments relating to class ascertainability,

typicality, individual questions of consent, and whether Gallup's telephone system was in fact an automatic telephone dialing system. *See Warnick v. Dish Network, LLC*, No. 1:12-cv-1952, DE 259 (D. Colo. Oct. 30, 2014) (denying class certification with prejudice). *See also Jamison v First Credit Servs., Inc.*, No. 1:12-cv-04415, DE 120 (N.D. Ill. July 29, 2013) (denying the motion for reconsideration of class denial).

As stated earlier, throughout a significant portion of this litigation, there remained a possibility of regulatory action from the Federal Communications Commission ("FCC") adverse to Plaintiff's position, including three Petitions, all requesting clarification from the FCC regarding the scope of the term "automated telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act ("TCPA"). The rulings on FCC Petitions are currently being appealed.  The uncertainty in the law remains a real risk and part of the consideration in negotiating the Settlement.

## 2. Range of Possible Recovery and the Point at which the Agreement is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors—the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable—are often combined. *In re Sunbeam*, 176 F.Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F.Supp.2d 1292, 1326 (S.D. Fla. 2007), quoting *Lipuma*, 406 F.Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F.Supp.2d at 1326.

The monetary relief secured on behalf of the Class is well within the range of what is fair, adequate and reasonable for a TCPA Settlement of this magnitude. Each Class Member submitting a timely and valid claim will receive their pro rata share of the remaining Settlement Fund, after deducting any reasonable attorneys' fees and costs approved and awarded by the Court to Plaintiff's Counsel, any incentive awards approved and awarded by the Court to Plaintiffs Soto, Marr and Fox, and the costs of notice and settlement administration.  As notice was mailed to approximately 70% of the class, and 3% of those individuals filed timely and valid claims, approximately 145,000 class members are set to receive their *pro rata* share of approximately $5 million, or approximately $34 per class member.

Moreover, the Agreement's terms are also fair, reasonable, and adequate when compared to other TCPA class settlements.[6] The relief available to each Settlement Class Member here is on par with the potential per-class-member benefit conferred in other TCPA class settlements that have received final approval.[7] *See In re Enhanced Recovery Co.*, 13-md-

---

[6] The TCPA provides a potential recovery of $500 and $1,500 if willful, but this does not take into consideration the risk of losing. Factoring in that risk in settlement necessitates a discounted recovery. As shown here, many courts have approved settlements providing a much lower per-class member benefit. *See. e.g., Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class); *Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) ($9,750,000 to cover claims of over 1,400,000 class members); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving settlement of $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012); *Adams v. AllianceOne Receivables Mgmt.*, No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members) see DE 109 at 10, 116 at 6, and 137.

[7] There have been at least eighteen other approved TCPA class action settlements that provided cash or merchandise to class members less than $100. *See e.g. Spillman v. RPM Pizza, LLC*, Case No. 3:10-cv-00349 (M.D. Louisiana)(DEs 244, 245)($15 recovery per claimant); *Desai v. ADT Security Systems*, Case No. 1:11-cv-01925 (N.D. Illinois)(DEs 240 and 243)($47

2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive relief for class) and DE 124 (settlement granted final approval); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (Holderman J.) (granting final approval were each claimant would be awarded $39.66; *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant). Because the Agreement is in the upper range of what is fair, adequate and reasonable for a TCPA Settlement of this magnitude, examination of the second and third *Bennett* factors support approval.

### 3. The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation.  In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future,

---

recovery per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (N.D. Illinois)(DE 74)($28.13 recovery per claimant); *Paldo Sign and Display Company v. Topsail Sportswear*, Case No. 1:08-cv-05959 (N.D. Illinois)(DE 116)($42 recovery per fax); *Adams v. AllianceOne Receivables Management, Inc.*, 3:08-cv-00248 (S.D. California)($40 recovery per claimant)(DEs 116 and 137; *Agne v. Papa John's International, et al.*, 2:10-cv-01139 (W.D. Washington)(DE 389)($50 recovery plus $13 merchandise per claimant); *Bellows v. NCO Financial Systems, Inc.*, 3:07-cv-01413 (S.D. California)(DE 38 at 6)($70 recovery per claimant); *Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash.)(DEs 61 at 3; 72)($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, 2:09-cv-00911 (W.D. Wash.)(DE 114, ¶ 11)($40 or $80 merchandise certificate per claimant); *Hovila v. Tween Brands, Inc.*, 2:09-cv-00491 (W.D. Wash.)(DE 12, ¶ 12)($20 or $45 merchandise certificate); *In re Jiffy Lube International, Inc. Text Spam Litig.*, 3:11-MD-02261 (S.D. Cal.)(DEs 90-1 at 7-8; 97)($15); *Kazemi v. Payless ShoeSource, Inc. et al.*, 3:09-cv-05142 (N.D. Cal.)(DE 94, ¶ 10)($15 merchandise certificate); *Kwan v. Clearwire Corp.*, 2:09-cv-01392 (W.D. Wash.)(DEs 201) ($53 per call); *Lemieux v. Global Credit & Collection Corp.*, 3:08-cv-01012 (S.D. Cal.)(DE 46, at 4)($70 recovery per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, 3:10-cv-01290 (S.D. Cal.)(DE 91 at 5)($85 recovery per claimant); *Sarabi v. Weltman, Weinberg & Reis Co.*, 3:10-cv-01777 (S.D. Cal.)(DE 42 at 6)(48 recovery per claimant); *Steinfeld, et al. v. Discover Financial Services, et al.*, 3:12-cv-01118 (N.D. Cal.)(DE 65 at 17)($47 recovery per claimant); and *Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-02414 (M.D. Fla.)(DE 77 at 5)($58-$75 recovery per claimant).

after protracted and expensive litigation." *Lipuma*, 406 F.Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F.Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approving the Agreement because the expense and complexity of further litigation would be substantial. It would require additional fact and expert discovery, pre-trial motion practice including motions for summary judgment, and conducting a trial. If the Court were to grant class certification or grant summary judgment in either Party's favor then, given the stakes, the losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F.Supp.2d at 1323, *quoting In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of litigation favors the approval of this Agreement.

### 4. Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, only eighty-four (84) class members requested exclusion, and just one objected.[8] *See*

---

[8] Plaintiffs note that November 13, 2015 is the deadline for objections and requests for exclusion. If additional timely objections or requests for exclusion are received subsequent to this filing, the Plaintiffs will file supplement briefing thereon.

[Objection of Curry Quenntte, DE 80].  Mr. Quenette, by his own admission, is not a Settlement Class Member because he claims that the call he received from Gallup was not placed using an automated system, and that he gave express consent to receive subsequent calls from Gallup. Accordingly, since Mr. Quenette is not a Settlement Class Member, he has no standing to lodge an objection. *See In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 343 (N.D. Ga)(Person not within definition of class lacks standing to object); *See also Raines v. State of Fla.*, 987 F.Supp. 1416, 1418 (N.D. Fla.)(Finding that "only the parties to the settlement of a class action (plaintiffs, class members, and the settling defendants), have standing to object".). Furthermore, the objection does not contain any specific criticism of the Settlement terms. Instead, the sole Objector simply expresses general disapproval of the lawsuit. This type of "philosophical" objection is inevitable in class actions, and thus "do[es] not impugn the adequacy of the settlement itself." *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 474 (W.D.Va. 2011).

    The fact that there is only one objection, considering the comprehensive notice provided to the class, demonstrates that class members find the agreement reasonable and fair, which strongly favors the Agreement. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."). The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement, and the Objector's arguments otherwise are not convincing.

### 5.  Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F.Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F.Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof. This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Agreement was not reached until after extensive law and motion practice, substantial discovery, full briefing on significant discovery including requests for production of documents, interrogatories, an in-depth Rule 30(b)(6) deposition of Defendant Gallup, and a full day of mediation, followed by significant follow-up negotiation. Class Counsel ensured they had sufficient information about the allegations of the complaint, the size of the Settlement Class, and the range of the Settlement Class's potential damages. Hence, there should be no question that, by the time the Agreement was reached, Class Counsel had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of the Agreement against continued litigation. The stage of proceedings factor thus weighs in favor of approval as well.

14

## V.     THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, notice of a class settlement must "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *See Alabama*, 271 F. App'x at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1314 (11th Cir. 2009) abrogated on other grounds by *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Neither Rule 23 nor Due Process require all class members to receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). In determining the sufficiency of the class notice, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007). Moreover, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted).

Here, the notice plan approved by the Court provided the best notice practicable. First, the plan required the Notice and Claims Administrator to send Notice via regular mail to potential Settlement Class Members identified by using a reverse look-up service to determine the contact information for each unique number. Agreement, ¶ 8.2.  The mail notice consisted of a postcard that contained a summary description of the Settlement Agreement, identifies the Settlement Administrator, and directs recipients to the Settlement Website from which additional information about the Settlement can be obtained. *Id.*, ¶ 8.2.2.

Second, the plan required the Notice and Claims Administrator to establish a Settlement Website that served as a supplement for conventional notice. *Id.*, ¶ 8.4.  It provides hyperlinks to the Claim Form, the Complaints, the Settlement Agreement, the Motion for Preliminary Approval, the Preliminary Approval Order, the Motion for Final Approval and the Final Judgment. *Id.* The Settlement Website shall also include the deadlines for filing claims, requests for exclusion from the Settlement, objections and final approval and other information pertaining to the settlement and how to submit claims, Frequently Asked Questions ("FAQ's"), and an interactive function that permits Class Members to submit or download a Claim Form online by submitting the cellular telephone number that was allegedly called by Gallup. *Id.*

Next, a toll-free number was established for receiving calls related to the Settlement. *Id.*, ¶ 8.5. The Mail Notice and Settlement Website included the toll-free number. *Id.* The Settlement Toll-Free Number will provides information about the Settlement and answers to FAQ's via Interactive Voice Response. *Id.*

16

Finally, the Settlement Administrator served the Attorneys General of all 50 States, and the Attorney General of the United States with notice of the Agreement, pursuant to 28 U.S.C. § 1715. Devery Decl., ¶ 15.

The notices gave Settlement Class Members a detailed explanation of the Agreement, including the relief, the releases and amount of the proposed Incentive Award and the costs and exact amount of Class Counsel Legal Fees to be requested, to enable them to evaluate their options and make an informed decision. In approving the Notice and Claims Procedures, the Court found: "The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights." [DE 79; ¶ 9]. These conclusions remain correct.

The Settlement Administrator followed the Court-approved Notice and Claims Procedures. Pursuant to the Court's orders, direct individual notice of the Settlement was sent to over 70% of the class by July 24, 2015. Devery Decl,. ¶ 5.  Over 44,856 persons called the 800 number with questions. Devery Decl,. ¶ 12. Class Members have until November 13, 2015 to opt out, object, or submit a Claim Form. As noted above, so far 145,677 Settlement Class Members filed Claim Forms and only one objection, by a self-professed non-class member, was filed.  Devery Decl,. ¶ 13.  The Notice complied with the court-approved plan, Rule 23 and due process and fully apprised the Class of all of the material terms of the Settlement as well as how to obtain additional information.

## VI.    CONCLUSION

This Agreement provides significant and immediate benefits for the Class, it is the result of arm's length, informed negotiations between experienced counsel with the assistance of an experienced mediator, and it satisfies each of the six *Bennett* factors.  The Agreement is fair, reasonable, and adequate under Rule 23, and thus Plaintiffs respectfully requests that this Court enter an order granting it final approval.

### CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Prior to filing the instant Petition, Plaintiffs' undersigned counsel avers he conferred with Defendant's counsel pursuant to Local Rule 7.1 and is authorized to represent that Defendant does not oppose the relief sought in this motion.

Dated: October 30, 2015                     Respectfully submitted,

*/s/ Seth M. Lehrman*

Scott D. Owens (Fla. Bar No. 0597651)
Email: scott@scottdowens.com
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33091
Telephone: (954) 589-0588
Facsimile: (954) 337-0666

Steven R. Jaffe (Fla. Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Fla. Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Fla. Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

18

Bret L. Lusskin, Jr. (Fla. Bar No. 28069)
Email: Blusskin@lusskinlaw.com
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844

Douglas J. Campion, Esq.*
Email: doug@djcampion.com
LAW OFFICES OF DOUGLAS J. CAMPION,
APC
17150 Via Del Campo Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

E. Elliot Adler, Esq.*
Email: eadler@theadlerfirm.com
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone (619) 531-8700
Facsimile (619) 342-9600

*Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on October 30, 2015, to all counsel of record listed below via email.

*/s/ Seth M. Lehrman*
Seth M. Lehrman

19

**SERVICE LIST**
*Soto v. The Gallup Organization, Inc.*
**CASE NO. 0:13-CV-61747- COOKE/TORRES**
**United States District Court, Southern District of Florida**

Felicia Yu, Esq.*
Email: fyu@reedsmith.com
Raagini Shah, Esq.*
Email: rshah@reedsmith.com
Abraham J. Colman, Esq.*
Email: acolman@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 457-8000
*Admitted Pro Hac Vice*

J. Randolph Liebler (Fla. Bar No. 507954)
Email: jrl@lgplaw.com
Dora F. Kaufman (Fla. Bar No. 771244)
Email: dfk@lgplaw.com
LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Facsimile: (305) 379-9626

*Attorneys for Defendant*

Todd M. Friedman, Esq.
Email: tfriedman@attorneysforconsumers.com
Nicholas J. Bontrager, Esq.
Email: nbontrager@attorneysforconsumers.com
LAW OFFICES OF TODD M. FRIEDMAN, PC
369 South Doheny Drive, Suite 415
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 623-0228

Abbas Kazerounian, Esq.
Email: ak@kazlg.com
Matthew M. Loker, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626

800-400-6808
Facsimile: 800-520-5523

Joshua B. Swigart, Esq.
Email: josh@westcoastlitigation.com
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: 619-233-7770
Facsimile: 619-297-1022

*Attorneys for Plaintiff Ann Fox in related action*
*Fox v. Gallup (1:14-cv-20538)*