## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 13-61747-Civ-COOKE/TORRES

KURT S. SOTO, an individual, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

THE GALLUP ORGANIZATION, INC., a
Delaware corporation,

    Defendant.
_____/

LAURIE C. MARR, on behalf of herself and
all others similarly situated,

    Plaintiff,

vs.

GALLUP, INC.,

    Defendant.
_____/

ANN FOX, individually and on behalf of all
others similarly situated,

    Plaintiff,

vs.

GALLUP, INC.,

    Defendant.
_____/

**OBJECTION OF ELIZABETH A. MILLER TO
PROPOSED CLASS ACTION SETTLEMENT AND
CLASS COUNSELS' MOTION FOR FEES**

Page 1 of 14

Comes now Class Member Elizabeth A. Miller, by and through counsel, and hereby objects to the proposed Class Action Settlement and Class Counsels' Motion for Fees. Class Member Elizabeth A. Miller represents that she is a member of the class and attaches hereto the notice received. In support of her objection, Class Member Elizabeth A. Miller states as follows:

### Standard of Review

In the 11th Circuit, an appellate court reviews a district court's confirmation of a class action settlement for an abuse of discretion. *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2012). Here, the "proponents of class action settlement bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Id.* The district court "reviews a class action settlement for fairness, reasonableness, and adequacy." *Id. at 1240*.

The Court of Appeals of the 11th Circuit "have instructed the district court to consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Faught.*, 668 F.3d at 1240; *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d, 1306, 1315 (11th Cir. 2009).

As discussed below, Class Counsel has failed to reach these threshold standards, and this Court should deny the settlement as it is not fair, reasonable and adequate to the class members.

**I.      The Proposed Settlement is unfair to the class members because Class Counsel is requesting an attorney's fee that is disproportionate to the work performed, and undeserved by Class Counsel.**

As stated by the 7th Circuit in <u>Creative Montessori Learning Centers v. Ashford Gear LLC</u>, 662 F. 3d 913, 918 (7th Cir.2011), "we and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers— the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests. <u>Eubank v. Pella Corp</u>., 753 F.3d 718, 720 (7th Cir. 2014);<u>Reynolds v. Beneficial National Bank</u>, [288 F.3d 277, 279 (7th Cir. 2002) ]; <u>Culver v. City of Milwaukee</u>, [277 F.3d 908, 910 (7th Cir.2002) ]; <u>Greisz v. Household Bank (Illinois), N.A.</u> 176 F.3d 1012, 1013 (7th Cir.1999); <u>Duhaime v. John Hancock Mutual Life Ins. Co.</u>, 183 F.3d 1, 7 (1st Cir.1999); <u>In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,</u> 55 F.3d 768, 805 (3d Cir.1995<u>); Plummer v. Chemical Bank</u>, 668 F.2d 654, 658 (2d Cir. 1982)." And "when a judge is being urged by both adversaries to approve the class action settlement that they've negotiated, he's at a disadvantage in evaluating the fairness of the settlement to the class." <u>Eubank</u>, 753 F.3d at 720.

And what of the role of the objector?  According to the 7th Circuit "enter the objectors. Members of the class who smell a rat can object to approval of the settlement." <u>Id.</u> If the objections persuade the judge to disapprove it, and a consequence a settlement more favorable to the class is negotiated and approved, the objectors will receive a cash award that can be substantial." <u>Eubank, 753 F.3d at 720.</u>  See also <u>In re</u>

<u>Trans Union Corp. Privacy Litigation</u>, 629 F.3d 741 (7th Cir. 2011).

Class Counsel touts that this settlement "was obtained after more than two years of high-risk litigation" and that "Counsel expended more than 1,700 attorney hours and more than $30,000 in out-of –pocket expenses." (Mtn for Fees, Doc # 83, p. 7).

Simply reviewing the docket shows that this litigation was one sided, and no adversarial pleadings were filed in this case, except the original and amended complaint. No motion to dismiss was filed.  No dispositive motions were filed.  Indeed, the only adversarial pleadings in this case related to Defendant's Motion to Stay Proceedings, pending an outcome with the FCC.  Class Counsel supports their fee application with claims that they engaged in "substantial class and merits focused discovery, including the production and review of thousands of pages of documents, and the Rule 30(b)(6) deposition of Defendant Gallup. (Doc # 83, p. 11).  The remainder of the "work" consists of telephone conferences, mediation, "negotiations" and "the filing of a motion seeking a discovery conference." <u>Id.</u>

It should not take over 2,500 or 1,700  hours to review documents identifying names of class members and a spreadsheet showing the calls made and the date of such calls. Electronic databases are routinely used to collect data, categorize it, and present it in a useful manner- such as the name of a class member, the date and time of the call, length of the call and the number of calls.

More alarming, Class Counsel alleges that "the substantial work necessitated by this case diverted the time and resources from being put into other matters." (Doc # 83, p. 12). It stretches the imagination to conceive of a how this particular case would cause not one, but five (5) law firms to ignore or not undertake new business, so that they could

each file a similar lawsuit seeking similar relief that ends up in a mediation less than a year after they file. A complaint was filed by Class Counsel on August 12, 2013, and amended several days later, along with a Motion to Certify. On October 9, 2013 Defendant filed its Answer and Affirmative Defenses. Then, the bulk of the docket shows various pro hac vice motions filed during the months of October and November along with various entries of appearance. Then the case was referred to mediation on November 15, 2013. The remainder of the 2013 year shows various orders and disclosures concerning discovery, and an order denying certification without prejudice on December 23, 2013.

These circumstances hardly justify the postponement of other employment or work on other matters by these attorneys at 5 different law firms. The year in litigation for 2014 was also uneventful, showing various motions for pro hac vice, motions to consolidate other cases, to appoint counsel as lead or interim counsel that were filed separately in other courts in a collaborative effort to bring the Defendant to the table.

Finally, in April and May of 2014 the parties sparred over Defendant's Motion to Stay Proceedings pending an outcome or determination by the FCC. Additional haggling over discovery between the parties resulted in this Court's order that the parties fully participate in the discovery process in an order dated June 6, 2014. A motion to compel was filed again on August 1, 2014, which was denied by this Court on August 18, 2014. The parties again were ordered to adhere to a joint stipulation on discovery.

Nothing happened in the year 2015 until May 15th when plaintiffs' unopposed motion for preliminary approval of class action settlement was filed. Everything else filed in 2015 was unopposed.

How does this justify the payment of 4 Million Dollars in attorneys' fees? How does this justify the sweeping statement that Class Counsel ignored other employment, or did not take on other matters because of this litigation? Class Counsel claims that the outcome here justifies the lack of actual work product generated, because "perhaps most tellingly, very few of the millions of Settlement Class Members raised objections to Class Counsel's effort or the cost and fee award proposed here despite the class notices explicitly advising of both the percentage and amount of the fees requested." (Doc # 83, p. 12). This is likely because Class Counsel never posted their Motion for Attorneys' Fees on the website. When the link is clicked, no document is available. This would require access to pacer to obtain Class Counsel's Motion for Attorneys' Fees- something that most class members would not have access to, let alone have knowledge of how to obtain. Conveniently, the class members are unable to review Class Counsel's fee application, without resorting to extraordinary means.

Class Counsel stands, or hides behind its fee request, by citing that "Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." Francisco v. Numismatic Guar. Corp., No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), citing Pinto, 513 F. Supp.2d at 1339." (Doc #83, p. 13). Here, the only risk was non-payment by Defendant for filing a Complaint, Amended Complaint, responding to a Motion to Stay Proceedings and a Motion to Compel Discovery. Add an additional $30,000 in costs that may have gone unreimbursed, shared among 5 (or more) law firms is not by any stretch "high risk". Not enough risk to justify payment of 4 Million Dollars.

Meanwhile, the attorneys in this case have stacked the card deck so they are

receiving 4 million dollars, while the class members receive under $100 per claim, limited to one claim per phone line. Here, "when the class attorneys succeed in reaping a 'golden harvest of fees' in a case involving a relatively small recovery, the judicial system and the legal profession are disparaged." Piambino v. Bailey, 757 F.2d 1112, 1144 (11th Cir. (Fla.) 1985). The only people benefitting from this case are the attorneys' seeking fees.

An issue also not effectively addressed by Class Counsel, is why it took not one, not two, but five law firms to litigate this case and settle it. At best, the work done is duplicative and unnecessary, and this Court should only award 1 Million Dollars, if it concludes based on the facts and evidence that such work merits even that award. Here, "the district court has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning so that we can undertake our review." Faught, 668 F.3d at 1242; Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1293 (11th Cir. 1999) (quoting McKenzie v. Cooper, Levins & Pasko, Inc., 990 F.2d 1183, 1184 (11th Cir. 1993).

If Class Counsel really thinks it deserves 4 Million Dollars, this Court should require Class Counsel to produce their time records in this case for review by this Court to determine whether or not sufficient evidence even exists to support a fee award of any amount, given the paucity of actual litigation that occurred in this case. "Furthermore, while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison." Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999). Any amounts not awarded as attorneys' fees should be distributed to the class.

**II.     The proposed settlement has a "clear sailing" provision, that provides for not only the recovery of 4 Million Dollars in attorneys' fees, but provides further relief to Class Counsel by explicitly allowing Class Counsel to appeal any award of fees that is less than such amount.**

The settlement contemplated by the parties explicitly provides for the recovery of 4 Million Dollars as attorneys' fees:

> Class Counsel shall move the Court for an award of attorneys' fees and costs incurred in connection with the Action to be paid to Class Counsel from the Settlement Fund. Gallup shall not object to such a motion so long as the total attorneys' fees and costs requested by Class Counsel do not exceed $4,000,000.

(Stlmt Agrmt, Doc # 77-1, p. 6, par. 5 "Attorneys' Fees and Costs for Class Counsel"). This simple money exchange between the parties is reinforced by the existence of language in the Settlement Agreement providing for just what happens if Class Counsel is denied its fees. The importance of the supervisory role of the district courts cannot be overstated, "particularly those involving the so-called 'clear sailing' agreements." *Waters, 190 F.3d at 1300* ("In general, a clear sailing agreement is one where the party paying the fees agrees not to contest the amount to be awarded by the fee-settling court so long as the award falls beneath a negotiated ceiling."Note 3). Here, capping Defendant's liability on 4 Million Dollars as payment of attorneys' fees satisfies such a provision.

Lacking confidence that this Court will approve the fees, or perhaps recognizing the existence of the issues raised in this objection, Class Counsel has "hedged their bet" to facilitate the payment of fees, regardless of the outcome in this case:

> Class Counsel reserves the right to appeal any award of attorney's fees and costs that is less than the amount the Parties agreed to in Section 5 below.

(Stlmt Agrmt, Doc # 77-1, p. 5, par. 2.1 "Preliminary Approval of Proposed Class Action Settlement").   This provision demonstrates a conspicuous lack of confidence by the parties as to this Court's intention to award 4 Million Dollars in attorneys' fees. Otherwise, why have such a provision?  Or stated another way, if Class Counsel is confident that the work performed justifies an award of fees of 4 Million Dollars, then perhaps the opposite language should be added – that Class Counsel will not appeal an award of attorneys' fees.  Because of the existence of the "clear sailing provision" and the intention of Class Counsel to appeal any award of fees lower than 4 Million Dollars, this Court should deny the proposed settlement.

**III.    The proposed settlement is unfair to the class members, as Class Counsel seeks payment of their fees based upon the common fund doctrine, which only allows the calculation of fees from funds payable to class members, and cannot be based in part upon administrative costs.**

The Common Fund Doctrine "authorizes the trial court to deduct as an attorneys' fee a reasonable percentage (which apparently means at least 20%) of a common fund that class representatives have collected for distribution among the class." <u>Davis v. Carl Cannon Chevrolet-Olds</u>, 182 F.3d 792, 795 (11th Cir. 1999).  Here, Class Counsel is basing its calculation of the common fund by including 2.5 Million Dollars in "administrative expenses".  (Stlmt Agrmt, Doc # 77-1, p. 8, par. 7.2 "Settlement Administration Expenses).  Such amounts are not "distributed among the class", <u>Davis supra</u>, and therefore cannot be properly included in the calculation of attorney's fees.

"Administrative costs should not have been included in calculating the division of the spoils between class counsel and class members.  Those costs are part of the settlement but not part of the value received from the settlement by the members of the class." <u>Person v. Nbty, Inc.</u>, 772 F.3d 778, 781 (7th Cir., 2014); <u>Redman v. RadioShack</u>

*Corp.*, 768 F.3d 622, 630 (7th Cir., 2014). Class Counsel's fee award, if any should be reduced proportionately by removing 2.5 Million Dollars from the 12 Million set aside by Defendant, before calculating a percentage of the fund.

**IV.  Class Counsel's control of the claims process through direct involvement in the day to day operations of the settlement administrator gives the appearance that the settlement is unfair to the class.**

Here, Class Counsel takes the bold step of interfering with the administration of the settlement:

> Because the costs of notice and settlement administration will affect each Class Member's pro rata share of the Settlement Fund, the costs of notice and settlement administration shall be overseen by Class Counsel. Gallup's counsel may also oversee the notice and settlement administration process as they deem necessary. The Parties will use good faith efforts to minimize the costs of notice and settlement administration.

(Stlmt Agrmt, Doc # 77-1, p. 8, par. 7.2 "Settlement Administration Expenses").

As set forth above Class Counsel is directly interfering in the operation of the settlement administrator's handling and dispensation of claims filed by class members. This relationship is too close for this Court to simply allow the settlement administrator to be nothing more than an extension of Class Counsel.  Oversight is one thing- directly interfering in the claims process is another matter entirely.  This Court should not permit Class Counsel to have direct control over the day to day operations of the settlement administrator.  At minimum, Class Counsel should be required to disclose to this Court the extent of their involvement with the settlement administrator, to satisfy this Court that they are not engaging in any behavior that would minimize the payment of claims.

"Another purpose of the adequacy inquiry is 'to uncover conflicts of interest between named parties and the class they seek to represent." *London v. Wal-Mart Stores,*

*Inc.*, 340 F.3d 1246, 1253 (11th Cir., 2003). In the 11th Circuit, the Court "has noted that basic consideration of fairness requires that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representative at all stages of the litigation where absent members will be bound by the court's judgment." *Id. at 1254.* Here, it appears that Class Counsel has direct oversight and control over the settlement administrator. With this entanglement of Class Counsel and the Defendant in the day to day operation of the settlement administration it gives multiple opportunities to manipulate information and data that would result in fewer claims being paid. Indeed, the opportunity to manipulate information or withhold benefits may come into play, as the parties "will use good faith efforts to minimize the costs of notice and settlement administration."

What role does Class Counsel have in approving payment of claims? What does this oversight by Class Counsel mean to this Court, and the absent class members? What actions are to be undertaken by the parties to "minimize the costs of notice and settlement administration?" According to Section 7.2, Class Counsel has authority over each and every act taken by the Settlement Administrator. This Court should deny the settlement under such conditions, or approve it only if Class Counsel demonstrates that they do not control the claims process or the payment of claims.

**V.    The proposed settlement is unfair to the absent class members because it contains a hidden cy pres provision that proposes to divert class recovery to an unidentified beneficiary.**

Class Counsel touts this settlement as fair to the class, and worthy of payment of attorney's fees. Yet Class Counsel and the Defendant failed to reveal to the class members the existence of a cy pres provision, that is engineered to disenfranchise the

class and funnel what little money is received to an unknown entity:

> 13.4 Any funds from uncashed settlement checks, as well any funds from settlement checks to Class Members whose valid address could not be located pursuant to Section 8.2.1 above, shall be delivered to a cy pres recipient selected by the parties and approved by the Court.

(Stlmt Agrmt, Doc #77-1, p. 18, par. 13.4 "Payments Upon Final Judgment"). It appears that those class members who do not make claims, or whose address cannot be validated will have there respective "share" of the settlement funneled into a cy pres recipient. Additionally, any checks that are mailed out but are not cashed within 90 days will also succumb to the same fate.

Traditionally, cy pres awards are "supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members." *Pearson*, 772 F.3d at 784. To ensure that the settlement retains some connection to the plaintiff class and the underlying claims, however, a cy pres award must qualify as "the next best distribution" to giving the funds directly to class members. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir., 2012). Not just any worthy recipient can qualify as an appropriate cy pres beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Id.*

Here, it makes sense to make another distribution to those class members who bothered to submit claims and cashed the first checks they received. In this manner, the class members are getting the benefits, however small of this settlement. And only after this Court determines the amount is so miniscule as to not justify additional distribution should the Court entertain a cy pres recipient, for which Objector reserves the right to

supplement this objection at such time as a recipient is identified.

In the alternative, this Court should deny the proposed settlement, as it is not designed to benefit the unnamed class members, but instead an unknown entity that is scheduled to receive what is likely the bulk of the class funds.

WHEREFORE, Objector prays that this Court enter the following Order/Judgment:

1) An Order finding that the attorneys' fee award is reduced from 4 Million Dollars to an amount that reflects the actual work performed by class counsel and its corresponding value to the class members after this Court reviews the time records of the five (5) firms that participated in this litigation;

2) An Order that the calculation of attorneys' fees cannot be based upon the administrative costs, or expenses associated with notice to the class and administration of the settlement fund;

3) An Order that denies the proposed settlement until such time as the parties agree that the settlement administrator will operate free from the interference of Class Counsel and the Defendant, and will be able to operate independently and will provide information and data as requested by this Court;

4) An Order that prohibits the establishment of any cy pres award until such time as this Court has determined that all settlement funds have been paid over to those class members who have sought compensation for their claims filed in this case;

5) That any cy pres beneficiary be subjected to review by this Objector before approval of this Court, to help and aid in ensuring that the cy pres beneficiary is established with the necessary nexus with the interests of the unnamed class members and the claims raised in this litigation;

6) And any further relief that this Court finds necessary to promote the interests of fairness and justice among the parties and the unnamed class members.

Respectfully submitted,

s/Steve A. Miller
Steve A. Miller (FL Bar No. 992224)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com


Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com


John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO  63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com

Attorneys for Class Member Elizabeth A.  Miller

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served upon all parties this 12th day of November, 2015 via the court's electronic filing system.

/s/ Steve A. Miller

I consent to the filing of the attached Objection on my behalf.

*[signature]*

**Soto TCPA Settlement Claims Administrator**
c/o Angeion Group
1801 Market Street, Suite 660
Philadelphia, PA 19103

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE PAID
RICHMOND, VA
PERMIT NO. 994

**ELECTRONIC SERVICE REQUESTED**

Unique ID #:  GA93529840
Last 4 Phone #: 5308

****************************SCH 5-DIGIT 80202
ELIZABETH A MILLER                    045/001
1625 LARIMER ST APT 2905                 5608
DENVER CO 80202-1539                   855981

## PLEASE RETAIN THIS POSTCARD FOR YOUR RECORDS

**Notice of Settlement**
*Soto v. The Gallup Organization, Inc., Case No 0:13-CV-61747-MGC, U.S.D.C. S.D. Florida*
**If you received a survey call on your cellular telephone from Gallup, you may be entitled to a payment from a class action settlement.**

A Settlement has been reached in a class action lawsuit claiming Gallup violated the Telephone Consumer Protection Act ("TCPA") by allegedly calling cell phones with an automated telephone dialing system without prior express consent. The Court did not decide in favor of either Plaintiff or Gallup. Gallup denies any violation or that it did anything wrong. However, to settle the case, Gallup will provide a Settlement Fund of $12,000,000.

**Who's Included?** You received this postcard because Gallup's records show you may be a member of the Settlement Class. The Settlement Class includes: "All persons in the United States who received a survey call from Gallup to a cellular telephone, through the alleged use of an automatic telephone dialing system, from August 16, 2009 through August 16, 2013."

**What Are the Settlement Terms?** Gallup will establish a Settlement Fund of $12,000,000 to pay valid claims from Class Members, any attorney fees and costs approved by the Court, any incentive awards to the Plaintiffs approved by the Court, and the cost of settlement administration.

**How can I get a Payment?** To get a payment you must submit a Claim Form. The claim submission deadline is **November 13, 2015.** You can submit a Claim Form on-line or by mail. Claim Forms must be submitted online by or postmarked no later than **November 13, 2015.**

If the Court approves the Settlement, Class Members who submit a valid Claim Form will be paid an equal distribution from the Settlement Fund after the costs of notice, settlement administration, attorneys' fees and costs, and Plaintiffs' incentive awards are deducted. The amount paid to Class Members will depend on the total number of valid Claim Forms submitted. It is estimated that the settlement payments will be between $25 and $60 per claim.

**Your Other Options:** If you do not want to be legally bound by the Settlement, you must exclude yourself by **November 13, 2015.** If you do not exclude yourself, you will release your claims against Gallup. You may object to the Settlement by **November 13, 2015.** The Notice available on the Settlement website explains how to exclude yourself or object. The Court will hold a Hearing on November 18, 2015 to consider whether to approve the Settlement. You may appear at the hearing, either by yourself or through an attorney hired by you, but you don't have to. For more information, call toll free, **1-800-577-3160** or visit **www.SotoTCPASettlement.com.**



HOME / FAQ'S / FILE A CLAIM / CONTACT US /

# Soto, et. al. v The Gallup Organization, Inc.

Case Number 0:13-61747-CIV-MGC/EGT -

**THANK YOU**

You have successfully submitted a claim for the information listed below. Please print this page for your records.

Name: ELIZABETH A MILLER
Address: 1625 LARIMER ST APT 2905
City: DENVER
State: CO
Zip: 80202
Country:
Unique ID: GA93529840
Phone number associated with this claim: 3038875308
Email: sampc01@gmail.com
Home Phone:
Date/Time Submitted: 11/11/2015 11:15:07 PM

Copyright © 2015