# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

KURT S. SOTO, an individual,
on behalf of himself and all others
similarly situated,

    Plaintiff,

v.

THE GALLUP ORGANIZATION, INC., a
Delaware corporation,

    Defendant.

_____

LAURIE C. MARR, on behalf of herself
and all others similarly situated,

    Plaintiff,

v.

GALLUP, INC.,

    Defendant.

_____

ANN FOX, individually and on behalf of
all others similarly situated,

    Plaintiff,

v.

GALLUP, INC.,

    Defendant.

_____

NO. 0:13-cv-61747-MGC

```
FILED by PG  D.C.

NOV 1 3 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI
```

## OBJECTION OF JILL WISEMAN PRICE

**NOW COMES** Jill Wiseman Price ("Ms. Price")[1], by and through her undersigned counsel, and respectfully objects to the proposed settlement and motion for attorneys' fees for the following reasons.

## I.  PRELIMINARY STATEMENT

> *"When it comes to class actions, a court must 'give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.'"*[2]

Plaintiff Soto filed the first complaint in this litigation on August 12, 2013. [Doc. 1]. Soto alleged that Gallup placed calls to cellular telephone numbers using an automated dialing system without prior consent of Plaintiff or other Class members. Soto sought statutory damages and injunctive relief for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"). Just fourteen (14) months later, the parties started mediation, ultimately reaching an agreement for a class-wide settlement (nearly seven million members) for $12 million. [Settlement Agreement, Doc. 77-1, at ¶3; Doc. 74].

---

[1]Price received a postcard notice from the claims administrator in or around mid-late July 2015. Price is a citizen of the United States and a resident of the State of Tennessee, residing at 848 Bennett Place, Knoxville, Tennessee 37909-2347. Her telephone number was (513) 225-1277. Between August 16, 2009 through August 16, 2013, Price received a survey call from Gallup to her cellular telephone through an automatic telephone dialing system. Price is not a person or entity excluded from the class. Price also timely submitted a claim several weeks ago.

[2]*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (collecting cases).

Above all, this case illustrates the dangers that result when Class Counsel abandons their duty to safeguard the interests of absent Class members. Here, Class Counsel had numerous opportunities throughout the settlement proceedings to shield their absent clients from the calamities ultimately produced by their settlement. Yet, at practically every turn, those opportunities were disregarded, missed, or neglected. By taking every precaution to protect their own interests, *i.e.*, negotiating a low-end settlement and inserting "clear-sailing" and "quick-pay" clauses into the settlement, Class Counsel abandoned their duty to adequately represent Class members, like Price.

The proposed settlement negotiated by Class Counsel is deficient in many respects. First of all, Class members are slated to receive $25-$80 for valid claims, although this amount could be drastically reduced if more claims are filed than anticipated. Still, a survey of other TCPA cases indicates that $20-$80 per claimant is on the low side of compensation. *See, e.g., Grannan v. Alliant Law Grp., P.C.*, 2012 WL 216522, *7 (N.D. Cal. Jan. 24, 2012) ($300 to $325 per class member).[3] Indeed, the TCPA, 47 U.S.C. §227(b)(3), authorizes an award of actual damages, or $500 per violation, whichever is greater. These amounts are trebled

---

[3]The proposed settlement is also unfair because it appears to not compensate class members in the way the TCPA is intended: that is per automated call not per claimant. "It is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class member's claims." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp.2d 891, 948 (E.D. La. 2012), aff'd, 739 F.3d 790 (5th Cir. 2014).

for wilful violations. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. Ill. 2012).

Second, not only have Class Counsel earmarked nearly 55% of the settlement fund for their fees and expenses and notice and administrative costs [Doc. 77-1, at ¶¶5 and 7.2],[4] but they also negotiated a nothing short of red-carpet treatment on fees by coaxing Gallup to agree (1) not to oppose their $4 million fee request, and (2) to pay most of their fees within 30 days after entry of final judgment (and the remainder by January 4, 2015). Undoubtedly, Class Counsel gave up something to achieve such treatment, and whatever it was, it came at the expense of Class members.

Third, unfortunately, the notice announcing the proposed settlement presented Class members with a range of recovery that left them with more questions than answers, especially considering that the key component of the ultimate claim amount, *i.e.*, the number of claims submitted, will remain unknown until after the November 13, 2015 claims deadline, which just so happens to be the last day to opt out or object to the proposed settlement.

Fourth, equally troubling is the amount of attorney's fees requested by Class Counsel. They request $4 million for their work, describing their efforts as

---

[4]After deductions are made for attorneys' fees ($4 million), expenses ($30,316.10), incentive fees ($6,000), and notice and administrative costs ($2.5 million), just $5,463,683.90 of the $12,000,000 settlement fund would remain for distribution to Class members.

-3-

"substantial litigation against a well-heeled defendant and sophisticated defense counsel." [Doc. 83, at pp. 10-11]. However, a fair examination of the docket and filings supports a fantastically different conclusion: the case was neither aggressively litigated by Class Counsel nor did they take the necessary steps to test the strength of their clients' claims. Indeed, it appears the most heavily disputed issue – and the only issue that provoked substantial briefing – was a motion to stay. [Docs. 40, 43, 44, 45, 46, 47, 54, 55, 57, 61, 71, 72].

In short, Class Counsel appears to have engaged in limited written and deposition discovery and very little discovery motion practice. While Class Counsel filed a place-holder motion for class certification, they did not otherwise litigate class certification. They did not face a single dispositive motion testing the sufficiency of Plaintiffs' complaint or their evidence. Likewise, Class Counsel did not face summary judgment proceedings. And no appeals were sought or taken by either party. What is evident, at least from a public view, is that Class Counsel did as little work in this case as they could have done, yet plan to walk away with $4 million for it.

Fifth, still other actions by Class Counsel provoke heightened scrutiny of their fee request. For instance, they negotiated two separate and distinct self-serving clauses with Gallup. The first, a "clear-sailing clause," provided that Class Counsel would receive up to $4 million in fees without Gallup's opposition. [Doc.

-4-

77-1, at ¶5].[5]  The second provision, a "quick-pay clause," provided that they would receive 75% of their fees ($3 million) within thirty (30) days of final judgment and the remaining $1 million by January 4, 2016.  [Doc. 77-1, at ¶5].[6] Despite these extraordinarily lawyer-friendly provisions, Class Counsel has never explained what they had to give up in return for either clause.  Naturally, this "blank check" did not come without a price, *i.e.*, Gallup received something of value, likely at the expense of the Class.  Construed together, the clauses bestowed nothing less than a "red carpet treatment on fees" to Class Counsel, and demonstrate a wretched mis-alignment between the interests of the Class on one hand and those of Class Counsel on the other, strong indicia of collusion.

Sixth, Class Counsel further betrayed their fiduciary allegiance to Class members by misinforming Class members of critical information necessary for them to exercise their legal rights, to wit: Class members were advised in the Class notice that their exclusions or objections had to be received by November 13, 2015, when, in fact, they had until November 13, 2015 to mail those documents.

---

[5][Doc. 77-1, at ¶5] ("Gallup shall not object to such a motion so long as the total attorneys' fees and costs requested by Class Counsel do not exceed $4,000,000.")

[6][Doc. 77-1, at ¶5] (attorneys' fees and costs . . . shall be paid to Class Counsel from the Settlement Fund in two installments, as follows: (a) within 30 days of Final Judgment, all but $1,000,000 of the attorneys' fees and costs award will be paid to Class Counsel; and (b) by January 4, 2016, the remaining $1,000,000 of the attorneys' fees and costs award will be paid to Class Counsel"); *see also* Doc. 77-1, at ¶13.1.

Seventh, what's more, Class Counsel failed to afford Class members a reasonable time or adequate opportunity to assess the fee motion, brief, and supporting materials.  Specifically, while the notice "specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested" [Doc. 83, at p. 9], it did not provide the basis for the requested award. Nevertheless, Class Counsel failed to provide Class members with a copy of their motion for fees and expenses via the settlement website until at least November 3, 2015 or afterwards – a mere 10 days before objection deadline.[7]  This failure prevented Class members from having a reasonable opportunity to assess Class Counsel's fee request.

In the last analysis, Price respectfully submits that the proposed settlement is unfair and unreasonable and Class Counsel's fee motion should be denied.

## II.   THIS SETTLEMENT DEMANDS STRICTER SCRUTINY

> *A trial judge's instinct, in our adversarial system of legal justice, is to approve a settlement, trusting the parties to have negotiated to a just result as an alternative to bearing the risks and costs of litigation.  But the law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action.  The reason is the built-in conflict of interest in class action suits. The defendant (as RadioShack's lawyer candidly admitted at the oral argument) is interested only in the bottom line: how much the settlement will cost him.  And class counsel, as "economic man," presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only*

---

[7]*See* Doc. 77-1, at ¶8.4.

> *money that class counsel, as distinct from the members of the class, get to keep.   The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel. Ordinarily – in this case dramatically – individual members of the class have such a small stake in the outcome of the class action that they have no incentive to monitor the settlement negotiations or challenge the terms agreed upon by class counsel and the defendant.*[8]

When, as in this case, the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  The role of the District Courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002). District Courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds*, at 279).

---

[8]*Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. Ill. 2014).

## III.   SPECIFIC OBJECTIONS

### A.   The Settlement Relief is Inadequate

In most cases, a court cannot make an informed judgment about the fairness, reasonableness, and adequacy of a class without assessing the likelihood and value to the class of the case's possible outcomes, referred to as the net expected value of the litigation. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011). A court must normally "weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011). Here, the parties have presented no evidence that would allow the Court to quantify or otherwise assess the value to the Class of continued litigation.

Class members are slated to receive $25-$80 for valid claims. A survey of other TCPA cases indicates that $25-$80 per claimant is on the low side of compensation. *See, e.g., Grannan v. Alliant Law Grp., P.C.*, 2012 WL 216522, *7 (N.D. Cal. Jan. 24, 2012) ($300 to $325 per class member).[9] Indeed, the TCPA, 47 U.S.C. §227(b)(3), under which this action was brought, authorizes an award

---

[9]The proposed settlement is also unfair because it appears to not compensate class members in the way the TCPA is intended: that is per automated call not per claimant. "It is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class member's claims." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp.2d 891, 948 (E.D. La. 2012), aff'd, 739 F.3d 790 (5th Cir. 2014).

of actual damages, or $500 per violation, whichever is greater.  These amounts are trebled for wilful violations.  *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012).

### B.   Notice Failed To Provide Necessary Information to Class Members To Permit Them to Assess Their Legal Options.

At the outset, Class members were not advised that about 55% of the $12 million Settlement Fund ($6,536,316.10) is already earmarked for payment of fees, expenses, incentive awards, and notice and administrative costs.[10]  Morever, while Class members who submit timely and valid claims will have to wait until appeals are exhausted before receiving payment, Class Counsel is slated to receive $3 million of their attorneys' fees within 30 days after final judgment and another $1 million on January 4, 2016.  These facts were not disclosed to Class members.

Second, the proposed settlement provides that each Class member who submits a valid claim would receive a pro rata share of the $12 million Settlement Fund, estimated to be between $25 to $80 per claim.  [Doc. 83, at p. 15].  The wide variance – $55 – between the low-end and the high-end of the recovery makes it problematic for Class members to decide whether to make a claim, exclude themselves, or object.  That dilemma is further complicated by the fact that neither amount is likely indicative of the actual recovery Class members

---

[10]A district court is obligated to function as "a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class." *In re Fidelity/Micron Sec. Litig. v. Fidelity Magellan Fund*, 167 F.3d 735, 736 (1st Cir. 1990).

should anticipate.  That is, the true amount of Class members' recovery will inevitably "depend on the total number of valid and timely claims filed by all Class Members," a fact that will be unknown until the claims period is closed.

Third, Class Counsel's fee papers are rife with misstatements, contradictions, and inconsistencies, making it difficult for Class members to ascertain precisely what is sought.  For example, Class Counsel's request for expense reimbursement is hard to understand.  In one sentence, Class Counsel states that their requested fee of 33 1/3 is "inclusive of Class Counsel's costs," but in the very next sentence they request $30,316.10 in costs.  [Doc. 83, at p. 19].[11]

Fourth, Class Counsel's notice misinformed Class members about their legal rights and pertinent deadlines.  Specifically, while the Settlement Agreement provides that objections must be *received or postmarked by* November 13, 2015 [Doc. 77-1, at ¶11.1] (emphasis added), the website notice provided, in bold typeface, that "Your objection to the Settlement must be *received by* November 13, 2015." (emphasis added).  Of course, "[a]ny Class Member who fails to submit a

---

[11]Equally problematic is Class Counsel's statement, fully two weeks ahead of the objection deadline, that:

> "very few of the millions of Settlement Class Members raised objections to Class Counsel's effort or the cost and fee award proposed here despite the class notices explicitly advising of both the percentage and amount of the fees requested."

[Doc. 83, at p. 12].  Clearly, this either demonstrates Class Counsel's clairvoyance or their poor proof-reading skills.

timely Objection . . . shall have waived any right to object . . . ." [Doc. 77-1, at ¶11.3].[12]

### C.   Class Counsel's Fee Request Is Unreasonable and Exorbitant Considering the Amount of Work Performed.

Here, Class Counsel argues that one-third of the gross settlement amount is within the market rate for TCPA cases[13] and that the risk they took justifies their fee request.  However, this is not a typical TCPA class action at all and the risk encountered – and work performed – by Class Counsel does not warrant the requested fee.  The case was settled prior to dispositive motion practice, prior to class certification proceedings, and prior to summary judgment proceedings. Notably, there is little or no evidence in the record justifying a large fee award.  In support of their motion, Class Counsel submitted a declaration generally attesting to their work and efforts on behalf of the Plaintiffs and Class in this case.  They did not provide billing records.

To satisfy their burden of justifying a proposed rate, Class Counsel may not simply submit "self-serving affidavit" to substantiate their market rates.  Rather,

---

[12]Mysteriously, although the Settlement Agreement provides that exclusions *and* objections must be "received or postmarked" on or before November 13, 2015, the website notice provided that exclusions could be postmarked by November 13, 2015 but objections had to received by that date. [Doc. 77-1, at ¶¶10-1, 11.1].

[13]Many courts simply refuse to award even 30% in TCPA cases.  *E.g., Steinfeld v. Discover*, 2014 U.S. Dist. LEXIS 48540, *5 (N.D. Cal. Mar. 31, 2014).

they are "required to present some evidence, other than [the attorney]'s affidavit, that the requested rates were the market rates for someone of [the attorney]'s experience." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 556 (7th Cir. 1999); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (fee applicant must "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with" prevailing market rate). Class Counsel have not met this burden.

Further, while Class Counsel request $4 million, the Court docket, motion practice, and proceedings since the commencement of the litigation simply fail to support such a substantial award. Nevertheless, Class Counsel maintain, with very little substantiation, that "[t]he work needed was extensive." [Doc. 83, at p. 11]. Cobbling together as much as they can, they recite a series of tasks, from an "extensive pre-suit investigation," to "opposing Defendant's repeated requests to stay the litigation," to purportedly "substantial class and merits focused discovery," and "telephonic conferences" about discovery issues, attending in-person mediation, and finally, "extensive arm's length settlement negotiations." [Doc. 83, at p. 11].

Without an opportunity to review the actual time records which Class Counsel were required to contemporaneously maintain, Price cannot fully assess

the reasonableness of their actual hours.[14]  However, given the lack of dispositive

motion practice, the lack of substantial adversarial discovery, the lack of class

certification proceedings, the limited number of hearings and substantive motions

briefed, the fact no summary judgment motions were filed by any party, that no

trial occurred, and considering the record fact that the most litigated issue in the

litigation was the motion to stay, Price respectfully suggests that 2,500 hours of

work and a $4 million uncontested, quick-pay fee appears excessive.

---

[14]Not only does the docket sheet not support Class Counsel's rendition of
their time spent working on the case, but they have submitted extraordinarily
contradictory statements about the amount of hours spent working on the
case. For instance, in their fee motion, Class Counsel states:

> "The Settlement was obtained after more than two years
> of high-risk litigation. Class Counsel expended **more
> than 1,700 attorney hours** and more than $30,000 in
> out-of-pocket expenses."

[Doc. 83, at p. 7] (emphasis added).  Yet, a few pages later, Class Counsel says:

> "Class Counsel had to engage in substantial litigation
> against a well-heeled defendant and sophisticated
> defense counsel to reach the Settlement. Class counsel
> expended **more than 2,500 otherwise billable hours**
> to this litigation over three years, worth more than $1.4
> million, and more than $30,000 in out-of-pocket
> expenses."

[Doc. 83, at pp. 10-11] (emphasis added).  There is no explanation given for a
disparity of *800 hours*.  While Mr. Lehrman makes reference to the 1,700 hours,
he does not refer to the other 800 hours. [Doc. 83-1].  Presumably, this reference
could be to the work of non-attorneys, but that is not certain.  Nevertheless,
whatever the explanation, the statement that 1,700 attorneys was spent on this
case, much less 2,500 hours, is simply hard to believe, considering the contents
of the docket.

This conclusion – that the requested fee is excessive – is further reinforced by the fact that Class Counsel vouches for their experience in cases of this nature. [Doc. 83-1, at ¶4 ("Our firm Farmer Jaffe Weissing, has served as class counsel in class action cases throughout the country which have recovered tens of millions of dollars for consumers"). This experience must necessarily translate into economies of scale. Here, obviously, it did not.

### D.   Class Counsel's Fell Short of Performing Their Fiduciary Duty to Class Members.

In virtually every class action seeking money damages, the person with the most at stake financially is the attorney representing the class. "At the settlement stage, class interests are no longer necessarily aligned with those of its counsel. Rather, the interest of class counsel in obtaining the biggest bang for its buck is more aligned with the interests of the defendant in obtaining peace at the lowest possible price."[15] And because collusion "may not always be evident on the face of settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest . . . to infect the negotiations."[16]

---

[15]Georgene Vairo, *The 2014 Randolph W. Thrower Symposium American Dispute Resolution in 2020: the Death of Group Vindication and the Law?: Article and Essay:is the Class Action Really Dead? Is That Good or Bad for Class Members?*, 64 Emory L.J. 476, 499 (2014).

[16]*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

-14-

Here, Class Counsel betrayed their allegiance to the very Class members they purport to represent not only by (a) misinforming them of critical information, *e.g.*, misstating the actual objection/exclusion deadline, and (b) misrepresenting the degree of work Class Counsel purportedly performed as "extensive," when it clearly was not, but also by failing to timely provide Class members with a copy of Class Counsel's motion for fees and expenses, and finally, negotiating two self-serving clauses with Gallup, whereby they would receive $4 million in fees with Gallup's express consent (the clear-sailing provision) and would receive fully 75% of their fees within 30 days of final judgment (the quick-pay provision).

First, Class Counsel failed to provide Class members with a copy of their motion for fees and expenses via the settlement website until sometime after November 3, 2015 – just 10 days before objection deadline,[17] preventing Class members from having a reasonable period to assess Class Counsel's fee request. Requiring Class members to object/exclude themselves without having been provided sufficient time and information to assess the reasonableness of the requested fee contravenes Rule 23(h),[18] resulting in a denial of due process.

---

[17] *See* Doc. 77-1, at ¶8.4.

[18] The relevant portions of Rule 23(h) provide:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable

The Advisory Committee Notes to Rule 23(h) support this reading of the rule, *see* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion"), and further advise that, where appropriate, the court will permit an "objector discovery relevant to the objections." *Id.* *See also* 5 *Moore's Federal Practice* § 23.124[4] (3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request.")  As one court observed,

> "[a]llowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members.  It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee."

*In re Mercury Interactive Corp. Securities Litig.,* 618 F.3d 988, 994(9th Cir. 2010).

In *Redman v. Radioshack,* 2014 U.S. App. LEXIS 18181, at *37-*38 (7th Cir. Sept. 19, 2014), Judge Posner explained that there was "no excuse" for this

---

manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

violation:

> From reading the proposed settlement the objectors knew that class counsel were likely to ask for $1 million in attorneys' fees, but they were handicapped in objecting because the details of class counsel's hours and expenses were submitted later, with the fee motion, and so they did not have all the information they needed to justify their objections.

*Id.* at *37-*38; *see also* Rubenstein, 3 *Newberg on Class Actions* § 8:24 (5th ed. 2014).

For all of this, the process afforded Class members to assess the reasonableness of Class Counsel's fee request was unfair and failed to provide many Class members an adequate opportunity to assess the motion and consider objecting to the fees.

Second, what's more, the parties' agreement on a fee award is not the end of the inquiry, for "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Product Liability Lit.*, 654 F.3d 935, 941 (9th Cir. 2011).

***The clear-sailing agreement.*** The proposed settlement reveals that Gallup agreed not to oppose any fee not exceeding $4 million which Class Counsel might seek. This "clear-sailing agreement" is "where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991). When confronted with such provisions, courts have

a heightened duty to peer into the provision and scrutinize closely the relationship

between attorneys' fees and benefit to the Class, being careful to avoid awarding

"unreasonably high" fees simply because they are uncontested.  *Staton v. Boeing*

*Co.*, 327 F.3d 938, 954 (9th Cir. 2003).  Judge Posner has described the problem

with such clauses:

> Another questionable feature of the settlement is the
> inclusion of a "clear-sailing clause" – a clause in which
> the defendant agrees not to contest class counsel's
> request for attorneys' fees.    Because it's in the
> defendant's interest to contest that request in order to
> reduce the overall cost of the settlement, the defendant
> won't    agree    to    a    clear-sailing    clause    without
> compensation – namely *a reduction in the part of the*
> *settlement that goes to the class members*, as that is the
> only reduction class counsel are likely to consider.  The
> existence of such clauses thus illustrates the danger of
> collusion in class actions between class counsel and the
> defendant, to the detriment of the class members.

*Redman v. Radioshack Corp.*, 2014 U.S. App. LEXIS 18181, at *36 (7th Cir. Sept.

19, 2014) (emphasis added).  After all, "[i]t is unlikely that a defendant will

gratuitously accede to the plaintiffs' request for a 'clear sailing' clause without

obtaining something in return.  That something will normally be at the expense

of the plaintiff class."  *Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985)

(Newman, J., concurring); *Bluetooth*, 654 F.3d at 948.

Additionally, there is a long-standing concern by courts that such clauses

may ultimately serve as a vehicle for collusive settlements.  *Eubank v. Pella Corp.*,

753 F.3d 718, 720 (7th Cir. 2014).  Accordingly, the Court has a heightened duty

to peer into the agreement and closely scrutinize the relationship between fees and the benefit to the Class.

**The quick-pay provision.** The second dubious fee-related clause in the agreement was a "quick-pay" provision. This clause provided that Class Counsel would receive 75% of their fees ($3 million) within thirty (30) days of final judgment and the remaining $1 million by January 4, 2016 [Doc. 77-1, at ¶5], notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement.

Quick-pay provisions allow Class Counsel to recover all of their fees and expenses before the Class has received any of the settlement's benefits. Plainly, like clear-sailing clauses, "quick-pay" provisions have value to Class Counsel. Equally as clear, defendants extract something in return, *e.g.*, a smaller total settlement amount or a reversion of settlement funds, harming class members.

Unfortunately, the proposed settlement benefits Class Counsel more than it does those persons who comprise the settlement class, and gives preferential treatment to Class Counsel. In the final analysis, the "quick-pay" clause and the "clear-sailing" agreement combine to make the award of fees and expenses self-serving and inequitable.

For all of this, the proposed settlement in this case is not fair within the meaning of Rule 23, should be rejected, and the application of attorneys' fees should be summarily denied.

**IV.    NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD**

      **NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Ms. Price in the above-styled action.  Counsel respectfully requests that he be allowed to be heard *via telephone* at the Fairness Hearing.

**V.     CONCLUSION**

      Price respectfully requests that this Court:

      1.     Reject the proposed settlement and fee award for the reasons specified; and

      2.     Award such other relief as is just and necessary in this matter.

      Respectfully submitted, this 12th day of November, 2015.

W. Allen McDonald, Esq.
249 N. Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800
*Admission Pending*

*Counsel for Jill Wiseman Price*

-20-

## CERTIFICATE OF SERVICE

I do hereby certify that on November 12, 2015, a copy of the foregoing was served, via Federal Express overnight delivery, on the following:

Clerk of the Court
U.S. District Court
Southern District of Florida
400 North Miami Avenue
Miami, Florida 33128

*Soto v. The Gallup Organization, Inc.,*
Case No. 13-cv-61747-MGC (S. D. Fla.)

I do hereby certify that on November 12, 2015, a copy of the foregping was served, via U.S. Mail, postage prepaid, and via electronic mail, on the following

Seth Lehrman
Farmer, Jaffe, Weissing,
Edwards, Fistos & Lehrman, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, Florida 33301
seth@pathtojustice.com

Abraham Colman
acolman@reedsmith.com
Felicia Yu
fyu@reedsmith.com
Reed Smith LLP
355 South Grand Ave., Suite 2900
Los Angeles, CA 90071

This 12th day of November, 2015.

W. Allen McDonald

-21-